[Civ. No. 9262.    Third Dist.    Feb. 19, 1959.]

JOHN K. DUNN, Appellant, v. VOGEL CHEVROLET COMPANY (a Corporation) et al., Respondents.

118

Anthony J. Scalora, Robert A. Zarick and R. N. Zarick for Appellant.

Johnson, Davies & Greve and Fitzwilliam, Memering & McDonald for Respondents.

PEEK, J.—In order to give adequate consideration to the questions raised by defendants in their petitions for rehearing, such petitions were granted and the cause resubmitted without argument. After due deliberation, we adopt the opinion heretofore filed with one modification necessitated by an inadvertent misstatement of the conditions to be met before the doctrine of res ipsa loquitur may be applied.

This is an appeal from a judgment of nonsuit entered in favor of defendants Vogel Chevrolet Company and General Motors Corporation on the second cause of action alleged in plaintiff's second amended complaint and from a judgment entered in favor of defendant Vogel Chevrolet upon a jury verdict as to the first cause in an action for personal injuries. The first cause of action alleged negligence on the part of Vogel in installing a brake hose on plaintiff's automobile. The second cause alleged that General Motors negligently manufactured the brake hose and negligently sold the same to Vogel for resale and use and that Vogel was negligent because it used the defective hose on plaintiff's auto.

Since this is an appeal from a judgment of nonsuit and since plaintiff contends that the evidence warranted an instruction on res ipsa loquitur we are confronted with two well established rules, each compelling us to review the evidence in the light most favorable to plaintiff. (See *Dunn* v. *Pacific*

*Gas & Elec. Co.*, 43 Cal.2d 265 [272 P.2d 745], and *Edgett* v. *Fairchild*, 153 Cal.App.2d 734, 738 [314 P.2d 973].)

The evidence so reviewed shows that while plaintiff was driving in downtown Sacramento his brakes failed. The car was taken to the Vogel garage and was assigned for repair to one Alexander, a mechanic in the employ of Vogel. Vogel's practice appears to have been that when a car was brought in for repair, an employee would discuss the condition of the car with the customer and following his diagnosis the car would be assigned to a mechanic accompanied by a time card which set forth the repair instructions. In this case the mechanic was instructed to "replace brake hose, adjust and bleed the brakes." Pursuant to the instructions, Alexander went to the parts department and obtained a new hose. All parts were ordered from General Motors Oakland plant. Brake hoses were packaged and delivered two in a carton, and upon receipt the carton was opened and the hoses placed in a bin where they remained until requested by a mechanic. Only the employees so assigned were allowed in that specific department. When the new parts were taken from the package they were "looked at" and if anything was "obviously wrong it was seen" and the part returned to General Motors. The parts manager recalled no defective hoses being returned during the time in question. After Alexander obtained the hose from the parts department, he examined it, determined it to be satisfactory and proceeded to install it on plaintiff's car. Plaintiff, who was there at that time, looked at the hose, noted that it appeared new, but made no particular inspection and left the garage before it was installed. After installing the hose and checking the brake system, Alexander tested the same and found it to be in good working order. Upon plaintiff's return he was informed the repair was finished. He in turn tested the brakes by stepping on the pedal, found them to be satisfactory, paid his bill and left. He concluded one errand in downtown Sacramento, drove to his home in the northern part of the city, and then to the home of his mother in Grass Valley, altogether a distance of approximately 60 miles. The brakes felt all right to him when he left Sacramento, but on the way to his mother's they appeared "spongy." Following dinner at his mother's he left to visit his brother in Penn Valley, some 10 or 12 miles distant from Grass Valley. The highway in this area traverses rolling foothill country. While descending Martell Grade he noticed some deer grazing along the highway. When he stepped on the brake pedal to slow down

for the deer, there was a snapping sound, and the pedal went all the way to the floorboard. The car immediately began to pick up speed with the result that it went out of control, making it impossible for plaintiff to negotiate a turn at the bottom of the hill. As a result the car went over the side of the road into a gully some 30 feet below the road bed. There were no skid marks or other tire marks on the paved portions of the highway but there were marks on the shoulder. Following the accident the car was towed to a garage in Grass Valley. When the brake system was examined six days after the accident, it was found that the threads on the male end and those on the female part of the hose were stripped. The hose, which was introduced in evidence, also showed that the brass nipple insert on the female end was flattened. The witness Alexander, who was called under section 2055 of the Code of Civil Procedure, first testified that it would have been impossible to have installed the hose so as to have stripped the threads. However he later testified that when threads are stripped upon installation, "you're in for a lot of trouble."

It is plaintiff's contention that the court erred in failing to give his requested instruction on the doctrine of res ipsa loquitur, as set forth in BAJI, 206-C, volume 2, pages 642-643. As stated in *Seneris* v. *Haas*, 45 Cal.2d 811, 823 [291 P.2d 915, 53 A.L.R.2d 124], the conditions to be met before the doctrine may be applied are that the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence, that it must be caused by an agency or instrumentality in control of the defendant and that it must not have been due to any voluntary action or contribution on the part of plaintiff.

In regard to the first element certainly it cannot be said that brakes ordinarily fail immediately after repair. The testimony relied upon by defendants as dispelling this element as a matter of law does nothing more than present a conflict in the evidence. Defendants further argue that since Vogel had relinquished control of the car to plaintiff the second requisite had not been met. The fact that the accident occurred after plaintiff took the car from the garage does not preclude application of the rule provided there is no evidence that the instrumentality had been improperly handled or that its condition otherwise changed as control was relinquished by defendants. (*Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682 [268 P.2d 1041].) As to the third condition it is defendants' contention that plaintiff was contributorily negligent by driving the car after the brakes were spongy; that the curves where

the accident occurred could be negotiated at 30 miles per hour; that there was no evidence of brake fluid on the pavement; that there were tire marks on the shoulder, and that the damaged brake hose was not discovered until six days after the accident all point to the conduct of the driver and not the defective brakes as the cause of the accident. Again this only presents a conflict.

■ Thus where, as here, "the evidence is conflicting or subject to different inferences, it is for the jury, under proper instructions, to determine whether each of the conditions necessary to bring into play the rule of res ipsa loquitur are present." (*Baker* v. *B. F. Goodrich Co.*, 115 Cal.App.2d 221, 229 [252 P.2d 24].) ■ In amplification of the previous rule the court in the Seneris case, *supra,* further held, at page 827:

". . . The conclusion that negligence is the most likely explanation of the accident, or injury, is not for the trial court to draw, or to refuse to draw so long as plaintiff has produced sufficient evidence to permit the jury to draw the inference of negligence even though the court itself would not draw that inference; the court must still leave the question to the jury where reasonable men may differ as to the balance of probabilities (*Res Ipsa Loquitur in California,* Prosser, 37 Cal.L.Rev. 183, 194-195). ■ The inference of negligence is not required to be an exclusive or compelling one. It is enough that the court cannot say that reasonable men could not draw it. (*Bauer* v. *Otis,* 133 Cal.App.2d 439, 443 [284 P.2d 133].) ■ The existence of the conditions upon which the operation of the doctrine is to be predicated is a question of fact and the right of the jury to find those facts must be carefully preserved (*Black* v. *Partridge,* 115 Cal.App.2d 639, 646 [252 P.2d 760]; *Rose* v. *Melody Lane,* 39 Cal.2d 481 [247 P.2d 335]; *Knell* v. *Morris,* 39 Cal.2d 450 [247 P.2d 352]; *Milias* v. *Wheeler Hospital,* 109 Cal.App.2d 759 [241 P.2d 684].)"

■ Additionally in the present case there is evidence to show that the defect in the hose was *patent* not *latent.* In discussing a similar situation, the Supreme Court in *Escola* v. *Coca Cola etc. Co.,* 24 Cal.2d 453, 459-460 [150 P.2d 436], held:

"If the explosion resulted from a defective bottle containing a safe pressure, the defendant would be liable if it negligently failed to discover such flaw. If the defect were visible, an inference of negligence would arise from the failure of defendant to discover it. Where defects are discoverable, it may be assumed that they will not ordinarily escape detection if

a reasonable inspection is made, and if such a defect is overlooked an inference arises that a proper inspection was not made. A difficult problem is presented where the defect is unknown and consequently might have been one not discoverable by a reasonable, practicable inspection."

A situation even more comparable to the instant case was presented in *Northern* v. *General Motors Corp.*, 2 Utah 2d 9 [268 P.2d 981]. There it was held that where the purchaser of a new truck sustained damages when the steering mechanism, which was alleged to have been defective, broke and caused the truck to turn over, the questions whether the defect in the mechanism existed at the time it was assembled, whether the defect could have been discoverable by reasonable inspection, and whether the injury to the purchaser was caused by the failure of the defective steering mechanism, were questions for the jury. In that case the facts showed that the shaft in the steering column, which was completely enclosed until the time of the accident, had a distinct penetration of rust at the place of the break. Such evidence, the court said, was sufficient to support a reasonable inference that the defect existed at the time it was assembled, and that the evidence was likewise sufficient to support the conclusion that the defect was such as could have been discovered by reasonable inspection. The court in the Northern case cited *Hooper* v. *General Motors Corp.*, 123 Utah 515 [260 P.2d 549], where it was held that where a wheel and rim separated, causing the wheel to collapse, and the evidence showed loose connections, it was some evidence of a defective wheel at the time of the assembly and some evidence of the cause of the accident, and certainly from such evidence reasonable minds could infer that the wheel was defective at the time of assembly.

What we have heretofore said concerning the applicability of the rule of res ipsa loquitur to the nonsuit as it applies to both defendants is equally applicable to the first cause of action on which the jury found for the defendant.

Since the case must be reversed for the reasons heretofore set forth, it becomes unnecessary to discuss the further questions raised by plaintiff.

The judgment of nonsuit as to the second cause of action and the judgment entered pursuant to the verdict of the jury on the first cause of action are reversed.

Van Dyke, P. J., and Schottky, J., concurred.

Respondents' petitions for a hearing by the Supreme Court were denied April 15, 1959.