437 P.2d 677

**TUCSON GENERAL HOSPITAL, Picker X-Ray Corporation, and Picker X-Ray Corporation, Waite Manufacturing Division, Inc., Appellants,**

**v.**

**Richard RUSSELL and Clara Mae Russell, husband and wife, Appellees.**

**2 CA–CIV 390.**

Court of Appeals of Arizona.

Feb. 27, 1968.

**194**

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Gerald L. Jacobs, Phoenix, for appellant Tucson General Hospital.

Browder, Gillenwater & Daughton, by Robert W. Browder, Phoenix, for appellants Picker and Waite.

Strickland, Altaffer, Davis & Eppstein, by Robert W. Eppstein, Tucson, for appellees.

MOLLOY, Judge.

Defendants in a personal injury case complain of the granting by the trial court of plaintiffs' motion for a new trial. At the close of the plaintiffs' case, the court had granted defendants' motions for directed verdict. In changing its position, the trial court stated:

"* * * that the evidence presented by plaintiffs was sufficient to present a jury question on the issue of negligence and liability under the doctrine of res ipsa loquitur as to all defendants, and under the doctrine of implied warranty as to the defendants [1] Picker X-Ray Corporation and Picker X-Ray Corporation, Waite Manufacturing Division, Inc."

This action arises from an injury sustained by Mrs. Russell, on October 14, 1963, while in Tucson General Hospital. She was lying on one of the hospital's X-ray tables, in preparation for having some X rays taken, when a part of the X-ray machine fell on her. The reason for the machine's falling was that a piece of the machine called a "pivot shaft" broke. This piece was the sole support for that part of the machine which fell on appellee.

The machine in question was manufactured between December of 1948 and March of 1949 by appellant Picker, sold to a Tucson retailer in April of 1949, then sold to a Tucson doctor, who, in 1954, sold it to Tucson General Hospital. The machine in 1959, and again in 1961, was disassembled, moved within the hospital and reassembled. It was also worked on in 1958. There were no periodic inspections made of the machine by the hospital to determine any worn parts. Whenever the machine malfunctioned, a repairman was called to repair the machine. The hospital exercised no control over such repairmen and it was stipulated by counsel that the relationship between the hospital and repair companies was one of owner-independent contractor.

Appellant Picker admitted it manufactured all parts of the subject X-ray machine except the offending pivot shaft. It

---

1. From the pleadings filed, it is indicated that Picker X-Ray Corporation and Picker X-Ray Corporation, Waite Manufacturing Division, Inc., are separate corporations. However, on appeal, no attempt is made to keep the position of these two corporations separate. These two corporations are collectively referred to in this opinion as "Picker."

expressly denied the manufacture of this item.

## RES IPSA LOQUITUR

█ It is the law in Arizona, as expressed by our Supreme Court in Capps v. American Airlines, 81 Ariz. 232, 234, 303 P.2d 717, 718 (1956), that the conditions necessary for the application of the doctrine are:

"(1) the accident must be of a kind which ordinarily does not occur in the absence of some one's negligence;

"(2) it must be caused by an agency or instrumentality within the exclusive control of defendant;

"(3) it must not have been due to any voluntary action on the part of the plaintiff;

"(4) plaintiff must not be in a position to show the particular circumstances which caused the offending agency or instrumentality to operate to his injury."

See Throop v. F. E. Young and Co., 94 Ariz. 146, 382 P.2d 560 (1963); First Nat. Bank of Ariz. v. Otis Elevator Co., 2 Ariz. App. 80, 406 P.2d 430 (1965), rehearing denied 2 Ariz.App. 596, 411 P.2d 34 (1966).

A. *Application of res ipsa doctrine to Appellant Picker.*

Plaintiffs concede in their brief that the res ipsa loquitur doctrine is inapplicable to Picker under the facts of the instant case. Hence, we consider in a subsequent portion of this opinion only whether there is a possible basis of liability on the part of Picker under "strict liability," or "warranty" as stated by the lower court.

B. *Application to Appellant Tucson General Hospital.*

█ The appellant hospital argues that three of the four conditions necessary for the application of the doctrine have not been met in this case. It is its position that:

1. the mechanical failure of the pivot shaft is not the kind of accident which does not ordinarily occur in the absence of negligence;

2. the evidence did not establish exclusive control of the machine in the hospital; and

3. all of the facts were equally available to all parties, and appellees were, therefore, in a position to show what happened.

Answering these arguments in order, we find the evidence to be undisputed that the reason for the failure of the pivot shaft was that " * * * somebody didn't put it in properly."[2] The evidence negatived the possibility of an inherent defect in the metal.[3] There is no evidence nor any contention made by the plaintiffs that this part or any other part of this machine was wrongfully designed. Without embarking into an ontological discussion of what is negligence, we express the opinion that parts of machinery are ordinarily not put together improperly unless there is a permissible inference of negligence. Accordingly, we reject the hospital's first contention as to why the doctrine of res ipsa is not applicable.

The hospital contends that "exclusive control" required by *Capps* must be at the time of the probable negligence—not at the time of the accident. The hospital points out that the defect here may have occurred before it purchased the machine or may have been caused by independent contractors employed by it to make installations or repairs. From this, it argues there was insufficient evidence for the jury to find it negligent.

█ We agree with the hospital's contention that the significant time of control

---

2. Testimony of John K. Anthony, Professor of Metallurgical Engineering, R.T. at 20.

3. Testimony of John K. Anthony, R.T. at 10:
   "Q Now in your examination of the pivot pin, Plaintiffs' Exhibit 15, did you find any metal fatigue?

   "A No metal fatigue, no, sir.
   "Q Did you find any flaw in the metal?
   "A No flaw in the metal."

is when the postulated negligence probably occurred rather than at the time of the accident itself, Rinkel v. Lee's Plumbing & Heating Co., 257 Minn. 14, 99 N.W.2d 779 (1959), but we do not agree that the permissible inference of negligence arising from that control is destroyed by showing there was a prior owner and that maintenance has been delegated to independent contractors.

The hospital owned and operated this machine from 1954 until the time of the injury some nine years later. From a purely mathematical computation of time, it is more probable that the act of misassembling the pivot shaft occurred during that time rather than during the five to six years between its manufacture and the hospital's purchase in 1954. There is no reason given in the evidence to infer that the misassembly was of long duration. Common experience would not indicate that a wrongful assembly of machinery parts, of sufficient gravity as to cause a mechanical failure of an important supporting piece, will ordinarily be of a duration exceeding the time during which this machinery was in the control of the defendant-hospital.

The possibility that an employee of the hospital was responsible for the wrongful placement of the pivot shaft is not eliminated by the evidence. Though two employees of the hospital testified they had no previous warning of this malfunction, they are interested witnesses and their testimony is not binding on the trier of fact. The lack of a periodic inspection program could be considered by the trier of fact. Adding the possibilities together, and in the absence of any other impelling explanation, the " * * * balance of probabilities * * *" permits an inference of negligence insofar as the hospital is concerned. Rohar v. Osborne, 133 Cal.App.2d 345, 284 P.2d 125, 129 (1955). See Zentz v. Coca Cola Bottling Co. of Fresno, 39 Cal.2d 436, 247 P.2d 344, 350–351 (1952); Phillips v. Delaware Power & Light Co., 202 A.2d 131 (Del.1964); Cobb v. Marshall Field & Co., 22 Ill.App.2d 143, 159 N.E.2d 520 (1959); Leidenfrost v. Atlantic Masonry, Inc., 235

Md. 244, 201 A.2d 336 (1964); Rinkel v. Lee's Plumbing & Heating Co., 257 Minn. 14, 99 N.W.2d 779 (1959); and Walsh v. Phillips, 399 S.W.2d 123 (Mo.1966).

The fact the hospital used independent contractors to do maintenance does not dispel the permissible inference of negligence on its part. First Nat'l Bank of Arizona v. Otis Elevator Co., 2 Ariz.App. 80, 85, 406 P.2d 430, 435 (1965).

The hospital's argument that the res ipsa doctrine is inapplicable because modern discovery procedures enabled the plaintiffs to learn all that the defendant knew about this accident rests on a false major premise. The hospital's employees will come and go, and yet it is charged with the knowledge acquired by each in the course of employment. See Restatement (Second) of Agency § 275, Comment e, at 600–01. When discovery procedures are employed, those employees who had the knowledge critical to establishing the cause of the malfunction may be long gone. Even if key employees remain, there is no guarantee they will give completely accurate answers to questions propounded by the opposing party.

■ In this case, the plaintiffs have apparently been able, through discovery devices or otherwise, to track at least one cause of their injuries down to a wrongful placement of a critical part. But who did this or when is unknown. The res ipsa doctrine is a particular application of the use of circumstantial evidence. McKeever v. Phoenix Jewish Community Center, 92 Ariz. 121, 123, 374 P.2d 875, 877, 1 A.L.R.3d 957 (1962). We fail to apprehend why the circumstantial evidence pointing to responsibility on the hospital's part is any the less cogent because it has been shown that a wrongful assembly of a particular piece on this machine rather than the whole machine was at fault.

■ We are not here concerned with jury instructions, as was the problem in O'Donnell v. Maves, 103 Ariz. 28, 436 P.2d 577 (Jan. 25, 1968); and Snethen v. Gomez, 6 Ariz.App. 366, 432 P.2d 914 (1967). We are only concerned with whether the plain-

tiffs produced sufficient evidence to make out a question for the trier of fact and we are of the opinion that this threshold was crossed.

## STRICT LIABILITY

 The order of the lower court which granted appellees a new trial, stated as an additional ground to res ipsa loquitur, that the evidence presented a jury question on the issue of appellant Picker's liability under the doctrine of "implied warranty." We believe what is meant by "implied warranty" is identical to the liability imposed by § 402(A) of Restatement (Second) of Torts, and adopted by this court in Bailey v. Montgomery Ward & Co., 6 Ariz.App. 213, 431 P.2d 108 (1967).[4]

The court in *Bailey*, stated the plaintiff must prove (1) that his injury was " * * * caused by a defect in the product * * * " and (2) " * * * that the defect existed when the product left the hands of the manufacturer or retailer." (431 P.2d at 112.)

There is only a tenuous inference that the pivot shaft in question was manufactured by Picker. This arises from the fact that the fractured part is obviously designed to fit this machine. But Picker points out that the part could have been specially tooled by unknown persons. If we assume this is a Picker product, the evidence is undisputed that the part had no defect—only that it was not "put in" properly. Under the same line of reasoning that led us to believe this error more probably occurred while the machine was in the hospital's control, we believe it less than a probability that the offending condition was there when the machine was originally sold fourteen years before this

accident. Liability may not be predicated on a lone possibility.

The order of the lower court, insofar as it provides for a new trial against appellant-hospital, is affirmed, and insofar as it directs a new trial against Picker is reversed.

HATHAWAY, C. J., and ROBERT O. ROYLSTON, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge ROBERT O. ROYLSTON was called to sit in his stead and participate in the determination of this decision.

---

4. "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
  "(a) the seller is engaged in the business of selling such a product, and
  "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although
  "(a) the seller has exercised all possible care in the preparation and sale of his product, and
  "(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."
Restatement (Second) of Torts § 402(A), at 347.