458 P.2d 371

**Clifton W. CARUTH and Mary E. Caruth, husband and wife, Appellants,**

**v.**

**John MARIANI and Rosetta Mariani, husband and wife; Young Buick Company, an Arizona corporation; and General Motors Corporation, a Delaware corporation, Appellees.**

**No. 2 CA–CIV 633.**

Court of Appeals of Arizona.
Division 2.
Sept. 4, 1969.

Holesapple, Conner, Jones, McFall & Johnson, by Blair D. Benjamin, Tucson, for appellants.

Chandler, Tullar, Udall & Richmond, by James L. Richmond, Tucson, for appellees Mariani.

Murphy & Vinson, by John U. Vinson, Tucson, for appellee Young Buick Co.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by William Kimble, Tucson, for appellee General Motors Corp.

MOLLOY, Chief Judge.

This is an appeal from judgment entered on verdicts directed by the trial court against the plaintiffs and in favor of all three defendants to an action brought by plaintiffs for injuries received when the plaintiffs' car was struck in the rear-end by a 1964 Buick station wagon. The cause of the accident was a brake failure of the Buick.

The defendants, Mariani, had purchased this car "new" from the defendant, Young

Buick, on July 29, 1964. The accident occurred on October 22, 1964 (less than four months after purchase). Between the time of purchase and the time of accident, Young Buick had performed all maintenance on the automobile and no work had been performed on the brakes. The defendant, General Motors Corporation, is the manufacturer of the car. There is no suggestion in the record of any failure on the part of the defendants, Mariani, to use ordinary prudence in the maintenance of their automobile. When hit, the plaintiffs were stopped in traffic, waiting for a car ahead to make a left turn. There is no contention that the plaintiffs were negligent in any respect.

The cause of the brake failure was a rupture in a steel tube containing hydraulic fluid. Evidence as to why this steel tube ruptured is sparse but significant. After the accident, repair was made by defendant, Young Buick, and its records, admitted in evidence, indicate that the brake line " * * * rubed [sic] through on body." Mrs. Mariani testified that she saw the tube at Young Buick immediately after the accident and that there was a "hole" in the line " * * * like it had been rubbed, oblong, like a little football, about a quarter of an inch."

An accident investigator, employed by the defendant, General Motors, testified:

" * * * it [the hole] was just forward of where the floor pan on the back makes an upward bend * * *"

This expert testified that there was evidence of wear in the area of this hole, larger than the hole itself, and it was his opinion that this worn area would *not* have been visible from the underneath side of the automobile. This witness opined that the pressure of the brake pedal immediately prior to the accident caused this worn spot to rupture, resulting in the brake failure.

The steel tube involved was not available at the time of trial. General Motors' accident investigator stated that he "thought" he had taken possession of it after the accident but he later searched for it and was unable to find it. The Buick had been driven slightly more than 10,000 miles at the time of this accident.

At the conclusion of the plaintiffs' case, which included the foregoing on the issue of liability and a great deal more on the issue of damages, the court directed a verdict in favor of the defendants, General Motors and Young Buick. At the conclusion of all the evidence, which added nothing more on the issue of liability other than an opinion of the plaintiffs that defective design on the part of General Motors caused this brake failure, the court directed a verdict in favor of the defendants, Mariani. This appeal questions the propriety of the three directed verdicts.

### STRICT LIABILITY

Among the plaintiffs' contentions is that of strict liability. Our Supreme Court has adopted § 402(A), Restatement (Second) of Torts as the law of this state. O. S. Stapley Company v. Miller, 103 Ariz. 556, 447 P.2d 248 (1968). This rule imposes liability upon a seller, regularly engaged in selling the particular product, for any product sold " * * * in a defective condition unreasonably dangerous to the user or consumer or to his property * * * for physical harm thereby caused *to the ultimate user or consumer,* or to his property * * *" (Emphasis added.) The Restatement rule issues a caveat as to whether such liability extends " * * * to persons other than users or consumers * * *"

In a continuation of the trend towards a judicial shifting of the loss resulting from accidental injuries, a number of recent cases have extended the doctrine of strict liability to give protection to non-consumers, such as these plaintiffs, whom the seller should have foreseen might be endangered by the defective product. Elmore v. American Motors Corporation, 70 A.C. 615, 75 Cal.Rptr. 652, 451 P.2d 84 (1969); Mitchell v. Miller, 26 Conn.Sup. 142, 214 A.2d 694 (1965); Piercefield v. Remington Arms Company, 375 Mich. 85, 133 N.W.2d 129 (1965); Darryl v. Ford Motor Com-

pany, 440 S.W.2d 630 (Tex.1969). The rationale for these decisions varies. In *Elmore,* the court said:

"In Greenman v. Yuba Power Products, Inc., *supra,* 59 Cal.2d 57, 63, 27 Cal.Rptr. 697, 701, 377 P.2d 897, 901, we pointed out that the purpose of strict liability upon the manufacturer in tort is to insure that 'the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.' "

\* \* \* \* \* \*

"In some cases the retailer may be the only member of that enterprise reasonably available to the injured plaintiff. In other cases the retailer himself may play a substantial part in insuring that the product is safe or may be in a position to exert pressure on the manufacturer to that end; the retailer's strict liability thus serves as an added incentive to safety. Strict liability on the manufacturer and retailer alike affords maximum protection to the injured plaintiff and works no injustice to the defendants, for they can adjust the costs of such protection between them in the course of their continuing business relationship."

75 Cal.Rptr. at 656, 657, 451 P.2d at 88, 89.

In *Darryl,* the court said:

"There is no adequate rationale or theoretical explanation why non-users and non-consumers should be denied recovery against the manufacturer of a defective product. The reason for extending the strict liability doctrine to innocent bystanders is the desire to minimize risks of personal injury and/or property damage."

440 S.W.2d at 633.

In *Mitchell,* the court said:

"The search for correct principles to delineate manufacturers' responsibility to ·consumers has found expression in the doctrine of tort and strict liability.

\* \* \* \* \* \*

"The public policy which protects the user and consumer should also protect the innocent bystander. \* \* \* There seems to be no sound public policy to bar a trial upon the issues raised in the complaint."

214 A.2d at 697, 699.

In *Piercefield,* the court said:

" \* \* \* the developing weight of authority, the essence of which is that the manufacturer is best able to control dangers arising from defects of manufacturer \* \* \* "

133 N.W.2d at 134.

■ We see a common thread running through these decisions. A sense of social justice has induced each of these courts to adopt the rule which they conceive will pass on to manufacturers the loss from accidental injuries resulting from defective products. If the doctrine were confined to manufacturers, this court would have no uneasiness about extending the doctrine to bystanders, because, insofar as manufacturers are concerned, there is very little distinction between the strict liability doctrine and liability based upon fault. As the majority states in *Piercefield:*

"Some quibbler may allege that this is liability without fault. It is not. As made clear above, a plaintiff relying upon the rule must prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains. When able to do that, then and only then may he recover against the manufacturer of the defective product."

133 N.W.2d at 135.

But these assaults upon the citadel do not stop here, as indicated by the encompassing view taken by *Elmore.* Once a court loses sight of the lodestar of liability based on fault, it becomes easy to impress liability upon others, who have done nothing wrong, and who may be subjected to financial ruin because of judicial insistence upon " \* \* \* maximum protection to the ·injured plaintiff \* \*· \* "

The situation in this case, of course, presents a poor opportunity for pointing out the hazards of extending this doctrine. Here, we have a retailer which is a carefully selected distributor of the product of the manufacturer, and there is a " * * * continuing business relationship" which will permit adjustment of any liability imposed upon the retailer under this beguiling new doctrine. And the plaintiffs here are obviously innocent of any contributory negligence, so that those sitting in judgment, whose natural inclinations may be to let the loss fall upon those most at fault, will feel no qualms of conscience in imposing liability upon Young Buick.

But, if the judiciary is to make new law, and discard the old because it is inconsistent, the least it can do is to select law which is not itself impregnated with inconsistency. The rule which we are asked to extend here is one that imposes liability upon the seller, regardless of contributory negligence of a plaintiff (leaving aside assumption of risk), *Stapley, supra,* 103 Ariz. at 561, 447 P.2d 248, and regardless of whether there is a " * * * continuing business relationship" between the retailer and the manufacturer. *See* § 402(A), Restatement (Second) of Torts. As to retailers who have purchased defective products from responsible manufacturers, the new doctrine will impose no hardship. But, to the retailer who has purchased his goods on the second-hand market, or who happened to have dealt with an irresponsible manufacturer, the new doctrine may mean economic disaster.

That such hypothetical defendants may be fewer in number than those who can pass their losses along would be a valid reason, perhaps, from a legislative standpoint, to nevertheless adopt a broad rule imposing liability, *if* this were necessary to achieve the principal social purpose which those advocating the new rule have in mind. But, if this responsibility "belongs" upon the manufacturer of the defective product, it is no longer necessary to impale the middlemen on the sword of liability to achieve this purpose. *See* Phillips v. Anchor Hocking Glass Corporation, 100 Ariz. 251, 413 P.2d 732, 19 A.L.R.3d 1 (1966). In the case at bar, General Motors makes no defense that its tort liability may not be adjudicated by the courts of this state, and in view of the developments in our law traced and enunciated in *Phillips, supra,* it is hard to conceive of a manufacturer of substantial means which will not be subject to suit here for defective products causing injuries in this state.

■ As to the argument that, inasmuch-as - we - have - gone - this - far - we - might - as - well - go - one - step - further, we see no end to this type of rationalization, if it can be dignified by such a label. Once liability is to be imposed without fault, there are no limitations, except one's sense of social justice, which varies from individual to individual and from generation to generation. Surely the pure consideration of what is good for society cannot be the guiding star of the judiciary, else we will have but two branches of government instead of three. This court declines to join the crowd rushing through the breaches made in the ramparts of the citadel of liability based upon fault. We hold that our strict liability doctrine does not extend to "bystanders." For support, from the growing minority of states♦ which have espoused a species of strict products liability, we can only cite Berzon v. Don Allen Motors, Inc., 23 A.D. 2d 530, 256 N.Y.S.2d 643 (1965), and the dissenting opinion of O'Hara, J., in Piercefield v. Remington Arms Company, 375 Mich. 85, 133 N.W.2d 129 (1965).

## LIABILITY BASED ON NEGLIGENCE

■ As to General Motors Corporation, it is our view that the trial court erroneously directed a verdict in its favor. We consider the question of whether there is sufficient circumstantial evidence to create a factual question at the conclusion of the plaintiffs' case to be a close one, but we believe that the question must be resolved in the plaintiffs' favor. In reviewing the propriety of the order granted, all

reasonable inferences in the plaintiffs' favor arising from the evidence produced must be accepted. Brand v. J. H. Rose Trucking Company, 102 Ariz. 201, 427 P.2d 519 (1967). It is not necessary that the plaintiff eliminate all unfavorable possibilities; the plaintiff's burden of proof is carried, if, taking the evidence most favorably for the plaintiff's position, it is more probable than not that there is a basis for recovery. Robledo v. Kopp, 99 Ariz. 367, 409 P.2d 288 (1965); Hewett v. Industrial Commission, 72 Ariz. 203, 204, 232 P.2d 850 (1951); Cook v. Michael, 214 Or. 513, 330 P.2d 1026 (1958).

We need not decide at this juncture whether this case presents an appropriate one for a res ipsa loquitur instruction to a jury. The sole question is whether there was sufficient evidence to withstand a motion for directed verdict. Hence, we do not indulge in what we consider to be unproductive line-drawing between (1) facts giving rise to the doctrine of res ipsa loquitur in its "distinctive" function, (2) circumstantial evidence of negligence and (3) the "characterization" of certain particular conduct as negligence. *See* Annots., 59 A.L.R. 468, 78 A.L.R. 731 and 141 A.L.R. 1016 for a collection of cases which profess both capacity and incapacity to draw these fine lines.

The question as we see it here is whether reasonable persons could be persuaded by this evidence that it is more probable than not that General Motors caused this accident to happen through some neglect or oversight on its part. We believe that they could.

In a very comprehensive and able brief filed in this court, General Motors raises many questions which are not conclusively answered by the evidence. It points out that, while it is shown this car was purchased from Young Buick less than four months prior to this accident, there is no showing as to when this car was delivered by General Motors to its retailer. This is true. But the evidence is clear that this car was bought "new" by the Marianis. While this label may have a different meaning to those intimately involved in the manufacture and distribution of automobiles, the meaning to the ordinary layman is reasonably clear. Most regard a "new" car as one which has not been used or tampered with in any way since the time of its manufacture. If this be the condition of the Marianis' car when purchased by them from Young Buick, it matters little when the car was delivered by General Motors.

General Motors points out that this car had been driven 10,000 miles since purchased and there is no direct testimony that the brake line was not bent through usage— " * * * by a rock flying up from under the car, by driving over a high spot in the road." It is true that these are *possibilities,* but we believe that reasonable men could, from this evidence, come to the conclusion that it was not *probable* that these types of things occurred.

Four months and 10,000 miles is a relatively short period of time in the life of an automobile. Brake lines don't ordinarily rub through from such usage. There was no work performed upon this braking system prior to the accident. When the line was removed from the car after the accident, the notation of the mechanic contains no suggestion of any bending or bruising of the line by an extraneous object. The testimony of the accident investigator employed by General Motors, when taken as a whole, leads to the definite impression that there was no extraneous force of the type suggested which caused this rupture. And the fact that this brake line appears to have disappeared, while in the possession of an agent of General Motors, is an additional factor that the jury would have had the right to consider in determining whether this leak was caused by something for which General Motors was responsible. McCormick, Evidence § 249 (1954); 2 Wigmore, Evidence § 285 (3d ed. 1940); and *see* Williams v. Williams, 86 Ariz. 201, 204, 344 P.2d 161, 163 (1959).

As we indicated in Tucson General Hospital v. Russell, 7 Ariz.App. 193, 195–196,

437 P.2d 677, 679–680 (1968), when we were speaking in terms of "res ipsa loquitur":

> " * * * the significant time of control is when the postulated negligence probably occurred rather than at the time of the accident itself * * *"

Here, we believe that it is more probable than not that the rubbing through of this brake line was caused by something that occurred during design or manufacture.

When there is such a probability, and when the defect causing the accident appears as soon after manufacture as this, we believe that at least the burden of going forward with the evidence shifted to the manufacturer, and that a direction of a verdict in favor of the manufacturer was improper. From among the myriad of decisions in this area of law, we believe the following selected decisions, which all deal with a defective braking system in an automobile, support our holding: Simpson v. Logan Motor Company, 192 A.2d 122 (D.C. Cir.1963); Ford Motor Company v. Fish, 232 Ark. 270, 335 S.W.2d 713 (1960); Dunn v. Vogel Chevrolet Company, 168 Cal.App. 2d 117, 335 P.2d 492 (1959); Gwyn v. Lucky City Motors, Inc., 252 N.C. 123, 113 S.E.2d 302 (1960); Markel v. Spencer, 5 A.D.2d 400, 171 N.Y.S.2d 770 (1958), aff'd, 5 N.Y.2d 958, 184 N.Y.S.2d 835, 157 N.E.2d 713 (1959); Noble v. Consolidated Beverage, Inc., 63 Wash.2d 478, 387 P.2d 765 (1963). For a compendium of cases in this general area of law, *see* Annot., 78 A.L.R. 2d 460 "Products Liability—Vehicles or Parts," particularly § 25(c).

All of the decisions relied upon by General Motors are distinguished from our factual situation. In Ford Motor Company v. McDavid, 259 F.2d 261 (4th Cir. 1958), the defect causing the accident could not have been caused by the manufacturer, as the entire responsible assemblage had been replaced by the retailer after delivery of the car (259 F.2d at 263–265). In Smith v. General Motors Corporation, 227 F.2d 210 (5th Cir. 1955), there was an " * * * absence of any direct proof or any circumstances tending to show by any preponderance that the death of plaintiff's husband was caused by a malfunctioning of his automobile" (227 F.2d at 216). In Vandercook and Son, Inc. v. Thorpe, 322 F.2d 638 (5th Cir. 1963), there was no showing of what caused a malfunction in a printing press (322 F.2d at 644). In Ulwelling v. Crown Coach Corp., 206 Cal.App.2d 96, 23 Cal.Rptr. 631 (1962), there was a clear showing that the absence of two bolts in a drive shaft assemblage was caused after a school bus was delivered to the user (23 Cal. Rptr. 640–641). In Haas v. Buick Motor Division of General Motors Corp., 20 Ill. App.2d 448, 156 N.E.2d 263 (1959), there was a fire in a fairly new automobile, but there was no showing as to what caused the fire (156 N.E.2d 266–267). Biondo v. General Motors Corporation, 5 Ariz.App. 286, 425 P.2d 856 (1967), is concerned with a broken axle, but there was no showing as to whether the axle was broken in the accident which caused the injury, or previously (5 Ariz.App. 290, 425 P.2d 856). In Jakubowski v. Minnesota Mining and Manufacturing, 42 N.J. 177, 199 A.2d 826 (1964), there was no indication as to how long or in what manner a grinding wheel had been used prior to the time that it broke apart (199 A.2d 828). Moreover, there was no showing but what grinding wheels of this type do not customarily break after a certain period of use (199 A.2d 829). In Shramek v. General Motors Corp., Chevrolet M. Div., 69 Ill.App.2d 72, 216 N.E.2d 244 (1966), there was no showing that there was any defect in the tire which blew out (216 N.E.2d 247).

Contrasted to all of these cases, we have here a clear showing as to what caused this accident—a rubbing through on the body of a fairly new automobile of a critical brake line. We believe the cases cited above, which permit the liability issue to be resolved by the fact finder, to be more analogous.

Though General Motors has not raised lack of privity as a defense, we note that

the Restatement (Second) of Torts, § 395, states:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and *to those whom he should expect to be endangered by its probable use,* is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied."

(Emphasis added.)

Comment *i* of this section of the Restatement makes it clear that liability under this rule extends to " * * * any person on the highway, including * * * drivers of other vehicles and their passengers and guests * * *". The interjection of contractual limitations into the law of torts by Winterbottom v. Wright, 10 Mees. & W. 109, 152 Eng.Reprint 402 (1842), has never been given imprimatur in this jurisdiction, and we see no reason to suppose that our Supreme Court will retrogress this far in the area of manufacturers' liability. *See* Southern Arizona York Refrigeration Co. v. Bush Mfg. Co., 331 F.2d 1, 9 (9th Cir. 1964) (applying Arizona law), and Witt Ice & Gas Co. v. Bedway, 72 Ariz. 152, 231 P.2d 952 (1951).

As to the defendants, Young Buick and the Marianis, the plaintiffs argue that this court should embrace the law of Maloney v. Rath, 69 A.C. 455, 71 Cal.Rptr. 897, 445 P. 2d 513 (1968), and Clark v. Dziabas, 69 Cal. 2d 449, 71 Cal.Rptr. 901, 445 P.2d 517 (1968), which hold that the statutory duty to have adequate brakes is a nondelegable one and that the owner is responsible for negligent maintenance by an independent contractor. It may very well be that the holding of these decisions, which rely upon §§ 423 and 424 of the Restatement (Second) of Torts, may become the law of this state. In Arizona, as in many states, there

is a statutory duty to have adequate brakes, A.R.S. § 28–952, as amended.

However, the plaintiffs do not contend that this statute imposes absolute liability on the owner of the car, *see* O'Donnell v. Maves, 103 Ariz. 28, 436 P.2d 577 (1968); Sax v. Kopelman, 96 Ariz. 394, 396 P.2d 17 (1964); Casey v. Beaudry Motor Company, 83 Ariz. 6, 315 P.2d 662 (1957); and Dayton v. Palmer, 1 Ariz.App. 184, 400 P. 2d 855 (1965), but only that the Marianis should be liable for any negligence of Young Buick in the maintenance of these brakes. Under *Maloney* and *Clark,* the liability imposed upon the owner is the *same* liability as that imposed upon the independent contractor for his *negligence. Maloney, supra,* 71 Cal.Rptr. at 899–900, 445 P.2d at 515, 516; *Clark, supra,* 71 Cal. Rptr. at 902, 445 P.2d at 518; and §§ 423 and 424 of the Restatement (Second) of Torts.

■ Under the plaintiffs' arguments, the defective brake line was in " * * * an inaccessible location."[1] There is no showing of a failure to make any called-for inspection that would have disclosed this defect. The appellants in their briefs in this court make no contention either that the Marianis or Young Buick did something that a reasonably prudent person would not have done or that either of them failed to do something that a reasonably prudent person would have done. In such circumstances, we regard allegations of negligence against these defendants to be abandoned. Davis v. Kleindienst, 64 Ariz. 67, 165 P.2d 995 (1946).

Accordingly, the judgment as to the defendants, Mariani and Young Buick, is affirmed, and the judgment as to the defendant, General Motors Corporation, is reversed and the cause remanded for new trial.

WILLIAM C. FREY, Superior Court Judge, concurs.

Note: Judge HERBERT F. KRUCKER having requested that he be relieved from

---

1. Appellants' opening brief, p. 20.

consideration of this matter, Judge WILLIAM C. FREY was called to sit in his stead and participate in the determination of this decision.

HATHAWAY, Judge (concurring in part and dissenting in part).

A strong distaste for the doctrine of strict liability (see dissenting opinion in Bailey v. Montgomery Ward) causes the majority to wend their tortuous path backward into the shadows of privity and warranty. The innocent bystander, potentially one of the more obvious beneficiaries of the strict liability doctrine, is then deprived of its reasonable application. See Elmore v. American Motors Corp., 75 Cal.Rptr. 652, 451 P. 2d 84 (1969); Piercefield v. Remington Arms Co., 375 Mich. 85, 133 N.W.2d 129 (1965).

I am unable to join the lament for economic distress caused a manufacturer of defective products, particularly when I consider the gladdening prospect that such distress operates toward eliminating defective products and the injuries which they cause. The judgment should be reversed as to General Motors Corporation and Young Buick.