400

CHRISTOPHER MARKEL, Respondent, *v.* PHILIP R. SPENCER, Defendant, and FORD MOTOR COMPANY, Appellant.

SHAREE MARKEL, Respondent, *v.* PHILIP R. SPENCER, Defendant, and FORD MOTOR COMPANY, Appellant.

Fourth Department, March 21, 1958.

*Percival D. Oviatt, Jr.,* for appellant.

*Sidney K. Schoenwald* for respondents.

HALPERN, J.  The defendant Ford Motor Company appeals from judgments against it entered upon jury verdicts in actions brought by the plaintiffs for personal injuries.  On May 22, 1955, the plaintiff husband was the driver of an automobile, and the plaintiff wife was a passenger in the automobile, while it was being driven along a public highway in the town of Himrod, New York.  The automobile was brought to a stop at a highway intersection.  While standing still, the plaintiffs' automobile was struck in the rear by a Ford automobile owned and operated by one Spencer, who was originally a codefendant in the action.  Both plaintiffs were injured as a result of the collision.

Spencer testified as a witness for the plaintiffs that he had been unable to stop because his brakes did not work.  He was driving a 1955 Ford " Crown Victoria " which he had purchased as a new car only three days before the accident.  The seller was identified as the McClure Motor Company of Troy, Pennsylvania.  Spencer was himself an employee of the McClure Company and he was therefore able to cover in his testimony the history of the car from the time it reached McClure to the time he purchased it.  At the time of the accident, the car had been driven only 240 miles.  Spencer had had no previous trouble with the brakes.  The only other person who had driven the car was Spencer's wife who had taken it on a trip the day before the accident at which time the car functioned " very

well ''. Both Spencer and his wife testified that they had had no accident while driving the car prior to the accident in which the plaintiffs were injured.

Spencer testified that he put his foot on the brake '' slow and easy '' in order to stop behind the plaintiffs' car but that the brake pedal went right down to the floor, without the brakes taking hold. As he pushed the brake pedal, he felt something drop past his leg. A search turned up a piece of a broken bolt and the other piece was found the next day under the car mat. The bolt was described as being about ½ inch in diameter, with a large head and shoulder and narrowing down in the threaded part. It had broken in half through the threaded part. The braking mechanism was described as follows: the brake pedal was attached to an arm which hung down from a point behind the dashboard; the brake pedal arm was connected by the bolt which had broken, to a rod which was in turn connected to the master cylinder. When the bolt broke, the brake pedal arm was no longer connected to the rod running to the master cylinder and the depression of the pedal, of course, could not activate the brakes.

Spencer testified that he knew that the McClure Company had not done anything to the brake mechanism after receiving the car from the Ford Company, except possibly adjust the brakes. The adjustment of the brakes, of course, did not involve any contact with the bolt connecting the brake pedal arm to the master cylinder rod. Spencer further testified that the car was '' brand new '' when he got it and that the entire braking equipment was new.

The pieces of the bolt were not available at the trial; their whereabouts were apparently unknown. Spencer testified that a representative of the Ford Motor Company had taken the pieces of bolt from him two or three weeks after the accident and that he had never seen them again. The attorney for the defendant Ford asserted that '' a bolt '' had been sent to the attorney for Spencer in response to his request but the latter refused to agree to this statement and he later asserted without contradiction that '' the last it [the bolt] is known it was delivered to a representative of The Ford Motor Company and from there on if it has been lost track of it is neither Spencer's fault nor these plaintiffs' fault.''

The plaintiffs rested on the foregoing proof, so far as the issue of liability was concerned. The defendant Ford offered no evidence. The court reserved decision on the motions by the defendants for a dismissal and for a directed verdict and

sent the case to the jury in a charge to which no exceptions on behalf of the defendant Ford were taken. The jury returned a verdict of no cause of action as against the defendant Spencer but returned a verdict in favor of the plaintiff husband in the amount of $2,500 and in favor of the plaintiff wife in the amount of $1,500 against the defendant Ford. The jury also answered certain special questions submitted to them by the court with reference to the liability of the defendant Ford, in favor of the plaintiffs. The court thereupon denied the motions upon which it had reserved decision and also denied a motion by the defendant Ford to set aside the verdict.

While a notice of appeal in the usual form was served, the attorney for the defendant Ford narrowed the scope of the appeal upon the oral argument. He stated that he desired to raise only the question of whether there was sufficient evidence to go to the jury and he expressly waived any right to a review of the weight of the evidence.

The question is thus sharply presented whether the plaintiffs' evidence was sufficient to make out a prima facie case against the defendant Ford authorizing submission of the case to the jury. In deciding this question, we must be " guided by the rule that the facts adduced at the trial are to be considered in the aspect most favorable to plaintiffs and that plaintiffs are entitled to the benefit of any favorable inference which can reasonably be drawn from those facts." (*Sagorsky* v. *Malyon*, 307 N. Y. 584, 586.) Under this rule, we think that the plaintiffs had clearly made out a prima facie case.

The case was correctly submitted to the jury as a case resting upon inferences from circumstantial evidence. Circumstantial evidence may, of course, be sufficient to sustain a finding of negligence. All that is involved in this case is a series of natural and logical inferences from the facts proven.

First, the jury had the right to find that the bolt was defective. The jury certainly was justified in finding that a ½ inch bolt in a fixed position in the braking mechanism of a new car, which broke after the car had been driven in a normal manner for only 240 miles, was defective.

Second, the jury had the right to find that the defect in the bolt existed at the time that the car left the possession of the defendant Ford. The evidence sufficiently excluded any tampering with the mechanism or any intervening accident which could have damaged the bolt after it left the Ford plant. Spencer's testimony that the car was "brand new" when he took possession of it warranted the inference that no accident

had taken place while the car was on the way from the Ford plant to McClure's, or while it was in McClure's possession. Certainly, any accident sufficient in force to affect a bolt in the interior of the braking mechanism would have left some external marks. There was direct evidence, in the testimony of Spencer and that of his wife, that no accident had occurred while the car was in their possession.

Third, the jury had the right to infer that the defect was due to the negligence of the defendant Ford. It was self-evident that the defect in the bolt must have been caused by some act or omission in the process of manufacture or inspection. The process of manufacture and inspection had been in the exclusive control of the defendant Ford. The jury was therefore justified in finding that the act or omission was that of the defendant Ford.

That the act or omission was a negligent one was also reasonably inferable. The jury had the right to infer that a new car would not have been turned out with a defective bolt if the required degree of care had been exercised by the manufacturer. The manufacturer was chargeable with knowledge that a defect in the braking mechanism would jeopardize the life and bodily security of any person who used the car or who was in the vicinity of its use, and the manufacturer was bound to use care commensurate with the risk.

The defect involved in this case was of a type which would not ordinarily occur in the absence of negligence. The defendant manufacturer would be the first to assert that the exercise of care in the process of manufacture and inspection is ordinarily adequate to prevent the turning out of an automobile with a defective bolt in a vital place in the braking mechanism. This must be so; if the break-down of the braking mechanism of its automobiles were a common occurrence despite the exercise of the requisite care, the defendant would be chargeable with knowingly turning out automobiles which were a menace to the public. Therefore, under the ordinary principles of circumstantial evidence, the jury was justified in inferring that there must have been some failure of care in the manufacture or inspection of the particular automobile involved in this case.

Finally, it is unquestioned that the breaking of the bolt, and the resulting failure of the braking mechanism, was the proximate cause of the accident in which the plaintiffs were injured. This is expressly conceded by the defendant Ford in its brief upon this appeal.

There is thus a complete chain of logical and natural inferences from the proven facts, leading to the liability of the defendant Ford.

A very similar case was before the Court of Appeals in *Swensson* v. *New York, Albany Desp. Co.* (309 N. Y. 497). In that case, the Ward La France Truck Corp. was held liable for the failure of the braking mechanism in a tractor in which the plaintiff Miss Swensson was a passenger. It was proved that, as the tractor came down an incline, the driver attempted to put on the air brakes but he found that "the air was gone" (p. 502) and the other brakes would not work either and the tractor went off the road and overturned. It appeared that the Ward Company had repaired and reconditioned the tractor after it had been driven 18,000 miles and had lent it to the driver's employer on the day of the accident for a trial run, with a view to its purchase by the employer if he found it satisfactory. The tractor had been driven from New York City to Plattsburg, New York, a distance of about 325 miles, and on the return trip the accident took place. This proof was held to be sufficient to make out a prima facie case on behalf of the plaintiff passenger. The defendant's defense was that there had been no defect in the mechanism at all and that the tractor had overturned because of the careless driving of the deceased driver. In the action on behalf of the estate of the driver, there was evidence that the method of inspecting the brakes used by the defendant was not an adequate one but there was no evidence as to the nature of the defect which had rendered the brakes useless and there was no evidence that the defect could have been discovered by a more rigorous inspection. Nevertheless, the Court of Appeals held that a prima facie case had been established on behalf of both plaintiffs and that it was within the power of the jury to infer that the brakes had been defective when the tractor left the possession of the defendant and that the defendant had been guilty of negligence in failing to discover it. The dismissal of the complaint by the Appellate Division was accordingly reversed and a new trial was ordered.

A recent case in the Federal courts is almost identical with the present case, except for the fact that the defect consisted of a loose turnbuckle instead of a defective bolt (*Pierce* v. *Ford Motor Co.*, 190 F. 2d 910, cert. denied 342 U. S. 887). In that case, too, the car was a new one; it had been purchased less than two weeks before the accident and it had been driven less than 900 miles. It appeared that the turnbuckle on the left

front tie rod was loose; this caused the front wheels to be thrown out of proper alignment, which in turn resulted in the rapid wearing out of the left front tire. The tire blew out and the plaintiffs were injured. There was evidence that the plaintiffs "had done nothing which could have caused the turnbuckle to become loose or to turn" (p. 912) but there was no direct evidence of the defendant's negligence. Chief Judge PARKER, writing for the United States Court of Appeals of the Fourth Circuit, said: "On the facts as thus developed we think that the issue as to the negligence of the defendant was clearly for the jury. Without invoking the res ipsa loquitur rule, we think the jury could well have found that the turnbuckle was loose when the car left the factory and that this was the cause of the wreck" (p. 912).

A summary judgment for the defendant was accordingly reversed and the case was remanded for trial. Subsequently, upon the trial of a companion case, the defendant introduced evidence tending to show that the dealer had tampered with the turnbuckle but there was countervailing evidence and the court held that the liability of the Ford Company was still a question of fact for the jury. Upon appeal from a judgment for the plaintiff, this holding was approved but the judgment was reversed because of the excessiveness of the verdict (*Ford Motor Co.* v. *Mahone,* 205 F. 2d 267). (See, also, *North American Aviation* v. *Hughes,* 247 F. 2d 517, cert. denied 355 U. S. 914.)

The cases dealing with injuries due to foreign substances in articles of food or drink are also illuminating here. It is settled, according to the overwhelming weight of authority, that a prima facie case of negligence is made out against the manufacturer of the product merely upon proof of the presence of the foreign substance, if it appears that the product had been sold in a sealed package or container or that other circumstances were present which made it reasonable to infer that the foreign substance had gotten into the product during the process of manufacture. *Miller* v. *National Bread Co.* (247 App. Div. 88) a decision of this court, is typical of this line of cases. This court said with respect to foreign material found in a loaf of bread that "it is difficult to see how it could have become embedded in the bread, except in the process of manufacture, and under such circumstances a *prima facie* case of negligence has been made out against defendant, and it is called upon to explain the presence of this foreign substance in its product". (See, also, *Trembley* v. *Coca-Cola Bottling Co.,* 285 App. Div. 539, and cases collected in Ann. 52 A. L. R. 2d 117, 129 and Ann. 4 A. L. R. 1559,

supplemented in Ann. 47 A. L. R. 148 and Ann. 105 A. L. R. 1039.)

The cases cited rest upon well-recognized principles of circumstantial evidence, as does the present case. Circumstantial evidence has been defined as "Evidence of some collateral fact, from which, either alone, or with other collateral facts, the existence or nonexistence of a fact in question may be inferred as a probable consequence" (Richardson on Evidence [8th ed.], § 149, p. 122). (See, also, 1 Wigmore on Evidence [3d ed.], § 25, p. 398; § 38, p. 428.) Of course, if the probabilities are evenly balanced, no inference adverse to the defendant may be drawn; to do so would be to indulge in speculation (*Galbraith* v. *Busch*, 267 N. Y. 230, 235). "What is required is evidence from which reasonable men may conclude that, upon the whole, it [was] more likely that there was negligence than that there was not" (Prosser on Torts [2d ed.], § 42, p. 200).

Applying these principles to this case, a prima facie case was clearly made out by the plaintiffs. In the light of all the evidence, the probability that the defect which caused the accident was attributable to the negligence of the defendant far outweighed any possibility that the defect was due to any other cause.

Of course, it is theoretically possible that, even though the defect occurred in the course of the manufacture of the automobile, the manufacturer was not guilty of any negligence in failing to prevent or detect the defect. But, in view of the fact that such a situation does not ordinarily arise, it was for the manufacturer to come forward with an explanation tending to show that this was such an exceptional case, if that is what it claimed. The defendant had superior knowledge as to the method of manufacture and inspection and it was in a far better position than the plaintiffs to come forward with proof on that subject.

The plaintiffs were not required in the first instance to negative the remote possibility that, despite the exercise of care, the defect had eluded the manufacturer. As the Court of Appeals said in the *Swensson* case (309 N. Y. 497, 502, *supra*), "plaintiffs were not required to offer evidence which positively excluded every other possible cause of the accident," citing *Rosenberg* v. *Schwartz* (260 N. Y. 162, 166).

"The existence of remote possibilities that factors other than the negligence of the defendant may have caused the accident, does not require a holding that plaintiff has failed to make out a *prima facie* case. It is enough that he shows facts and condi-

tions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred '' (*Ingersoll* v. *Liberty Bank of Buffalo,* 278 N. Y. 1, 7).

'' Circumstantial evidence is sufficient if it supports the inference of causation or of negligence even though it does not negative the existence of *remote* possibilities that * * * the defendant was not negligent '' (*Dillon* v. *Rockaway Beach Hosp. & Dispensary,* 284 N. Y. 176, 179)'. (See, also, *Betzag* v. *Gulf Oil Corp.,* 298 N. Y. 358, 364–365.)

The plaintiffs were not required, in order to make out a prima facie case, to prove the exact nature of the defect which caused the bolt to break or to prove the exact nature of the negligence which had allowed it to go into the final product undetected. So long as the proof was sufficient reasonably to warrant an inference that there had been some negligence on the part of the manufacturer, with respect to the bolt, a prima facie case was made out. This is especially true in this case, in view of the fact that the broken pieces of the bolt had not been made available to the plaintiffs prior to the trial and were not available at the trial, the pieces having been last seen in the possession of the defendant.

'' Circumstantial proof may be sufficient to meet the burden of proof on an issue like negligence even though the inference is equivocal as to just what the party's specific acts or omissions were. This is so whenever it appears sufficiently likely that defendant's conduct included *some* act or omission which a jury could call negligent '' (2 Harper and James, Law of Torts, § 19.4, p. 1072).

'' A plaintiff is not, however, required to point out the particular act or omission which caused the accident. It is enough if he shows facts and conditions from which negligence of a defendant and the causation of the accident by the negligence may be reasonably and legitimately inferred '' (*White* v. *Lehigh Val. R. R. Co.,* 220 N. Y. 131, 136).

Counsel for the defendant Ford suggested upon the oral argument that, with respect to the bolt, Ford may have been only an assembler and that the bolt may have been manufactured by others. But the answer of the defendant specifically admitted the allegation of the complaint that the defendant Ford was '' engaged in the manufacture of automobiles and in particular, the 1955 Ford Crown Victoria, owned and operated by the defendant Philip R. Spencer ''. In the absence of qualification, the defendant's admission must be taken to mean that it manufactured the whole automobile, including all its parts. But

even if it is assumed that, despite this admission, it was permissible for the defendant to show that it did not manufacture the bolt, the fact remains that it made no such showing upon the trial. Furthermore, even if it were found that the defendant had purchased the bolt from others, the inference of negligence on its part was nevertheless a permissible one. The defendant owed a duty of care, commensurate with the risk, to inspect the bolts which it incorporated into vital places in the mechanism of the automobile. (*MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382). In the absence of an explanation of the methods of inspection used, it was permissible for the jury to infer that the inspection had not been sufficiently rigorous and that, if proper care had been exercised, the defect would have been discovered.

However, it is not necessary to rely upon an inference of negligence in the process of inspection in this case. The defendant represented to the public that the car as a whole was manufactured by it. One who puts out a complete product, as being of his manufacture, is liable for any defect in a component part as if he had manufactured it, even though, in fact, he had purchased the part from others. It is not material in such a case whether the defect could have been discovered by inspection at the time of assembly (Restatement, Torts, § 400 and 1948 Supp., pp. 707–709 and the cases in other jurisdictions there cited; *Hansen* v. *Adams Grease Gun Corp.*, 254 App. Div. 633 [4th Dept.], no opinion, affd. 278 N. Y. 687, no opinion; *Willson* v. *Faxon, Williams & Faxon*, 208 N. Y. 108; *Dysko* v. *Mack Int. Truck Corp.*, 142 N. Y. S. 2d 699).

There is no need in this case to invoke the special doctrine of negligence law known as *res ipsa loquitur*. As Chief Judge PARKER indicated in the *Pierce* case (190 F. 2d 910, 912, *supra*) there is no need to invoke that doctrine in a case in which the evidence is sufficient to make out a prima facie case under the ordinary principles of circumstantial evidence. It is necessary to rely on the rule of *res ipsa loquitur* only when the circumstances proved are in themselves "neutral" (*Plumb* v. *Richmond Light & Ry. Co.*, 233 N. Y. 285, 288) and the evidence is insufficient " to justify any inference that the defendant was negligent " without the " application of that rule " (*George Foltis Inc.* v. *City of New York*, 287 N. Y. 108, 112–113). See, also, Prosser, Res Ipsa Loquitur in California, 37 Cal. L. Rev. 183, reprinted in Prosser, Selected Topics on the Law of Torts, 302; Jaffe, Res Ipsa Loquitur Vindicated, 1 Buffalo L. Rev. 1; 38 Am. Jur., Negligence, § 297, p. 992; Ann. 59 A. L. R. 468, 470.)

In this case, as we have seen, the evidence was sufficient to warrant an inference of negligence on the part of the defendant, under the ordinary principles of circumstantial evidence. Therefore, we do not reach the question of whether the distinctive doctrine of *res ipsa loquitur* might properly be applied to this case.

The judgments and orders appealed from should be affirmed, with costs.

KIMBALL, J. (dissenting). There is no disagreement as to the proposition that the doctrine of *res ipsa loquitur* is inapplicable in this case. The majority is of the opinion, however, that there is sufficient circumstantial evidence from which the inference of negligence on the part of the defendant-appellant may be drawn and that the plaintiffs, therefore, made out a prima facie case.

The burden of proof was upon the plaintiffs to establish negligence and the mere happening of an accident does not do so. It was the claim of the plaintiffs, as set out in their bill of particulars, that a bolt on the brake cylinder was defective, causing it to break and resulting in a loss of the brake fluid; that the metal itself was defective and that the bolt was improperly installed. No proof was made of such claims. The evidence is that the defendant, Spencer, purchased the car from the dealer; that it had been driven about 240 miles when the accident occurred; that while in the possession of the dealer, the brakes on the car were adjusted; that no accident had occurred to the car while in the dealer's possession or in the possession of the defendant Spencer. The proof then is that a bolt on the brake arm broke while the car was being operated. There is no evidence as to what the alleged defect was. The bolt was not produced upon the trial. We are not informed as to why the brakes were adjusted by the dealer or what the adjustment consisted of. There is no evidence of the history of this car from the time it left the factory of the defendant-appellant to the time it came into the possession of the dealer. No proof was made that the car when delivered to Spencer was in the same condition as when it left the factory. We have not been told that the alleged defective bolt was the same bolt which was on the car when the Ford Company parted with possession. Whether or not there was a mishap in the transportation of the car from factory to dealer has not been touched upon. It does not appear how the car was transported or what hands it passed through before the dealer obtained possession. To draw the inference that the accident occurred by reason of the negligence

of the defendant-appellant in the manufacture or inspection of the automobile is merely a conclusion based upon speculation and conjecture. The picture would have been much more favorable to the plaintiffs, upon the facts produced, had the car been delivered to Spencer by the Ford Company itself. The cases dealing with foreign substances in cans or packages are not in point. In those cases, it is evident that the foreign substances necessarily had to find their way into the can or package where the packing was done. An examination of the case of *Swensson* v. *New York, Albany Desp. Co.* (309 N. Y. 497) and the case of *Pierce* v. *Ford Motor Co.* (190 F. 2d 910, cert. denied 342 U. S. 887) discloses that there was proof on the part of the plaintiffs of defects which were traceable to the defendants in the course of repair or in manufacture. In this case, the plaintiffs failed to carry the burden of proving sufficient facts to carry the case to the defendant. The defendant-appellant's motion should have been granted.

All concur, except McCurn, P. J. and Kimball, J., who dissent and vote for reversal and for dismissal of the complaints in a separate opinion by Kimball, J., in which McCurn, P. J., concurs.

Present — McCurn, P. J., Kimball, Williams, Bastow and Halpern, JJ.

Judgments affirmed, with costs.