In the Matter of ALAN M. RIDINGS, Petitioner, v ANTHONY T. VACCARELLO, as Commissioner of Sanitation, Department of Sanitation, Environmental Protection Administration, Respondent.—Proceeding pursuant to CPLR article 78 to review respondent's determination, dated February 7, 1976 and made after a hearing, which dismissed petitioner from his position as a sanitation man. Petition granted and determination annulled, on the law, without costs or disbursements, and charges dismissed. On November 3, 1975 foreman Santora was punched and beaten by sanitation man Mayer. The petitioner, sanitation man Ridings, was charged with aiding and abetting Mayer in the assault and with failing to come to the aid of Santora. After a hearing, the petitioner was dismissed from his employment. In our opinion, the determination of the respondent commissioner is not supported by substantial evidence (see CPLR 7803, subd 4). Petitioner has a perfect, blemish-free record of employment for the five years he has been a sanitation man. Respondent has drawn the inferences most unfavora-

ble to petitioner from circumstances which appear to be wholly innocuous. Respondent's main point is that petitioner "lured" Santora into the section room in order to facilitate the attack upon him by sanitation man Mayer. In fact, all petitioner did was to suggest that Santora speak to Mayer if he intended to replace Mayer on the day's run. Petitioner's testimony, supported by that of sanitation man Bentivegna, was that he knew Mayer was going to be replaced for the day. Thus, he had reason to suggest that Santora enter the section room to talk to Mayer. Additionally, superintendent. Wietzychowski instructed Santora to send Mayer up to speak to him if he was going to be replaced for the day. Thus, even without petitioner's suggestion, Santora was going to speak to Mayer. Moreover, if Mayer was going to be replaced, Santora had to see Mayer and send him to the sick line. Furthermore, the section room was also Santora's office, and he would have entered it even without petitioner's suggestion. Petitioner gave a valid and logical explanation for his presence in the section room during the attack. Before Santora entered the room, petitioner returned there to retrieve his gloves from his locker, as they were too dirty to carry on his person until necessary. Petitioner was in the room before Santora entered, and therefore could not have entered behind Santora and closed the door. Also, petitioner was not standing "shoulder to shoulder" with Mayer. In these aspects, petitioner is supported by the testimony of Bentivegna, who had entered with petitioner but left before the attack, and of assistant foreman Cortignola, who entered the room and halted the attack. Petitioner could not prevent the attack or intervene once it began because it was over in a matter of seconds. It involved only a few quick, "professional type" blows. Petitioner did not go to the aid of Santora after the attack since the assistant foreman, who went to care for Santora, told him to take care of Mayer. The words used by petitioner, "Okay, Allan, that's enough", are not necessarily words of complicity; under the circumstances the words were a manner of speech and an expression used to placate and restrain an obviously upset and violent individual. It is also significant that Santora, in relating the event to the superintendent and the police on the day of the attack, did not implicate petitioner. Nor did Santora implicate petitioner in the attack when charges were filed with the District Attorney's office. Respondent's determination is without evidentiary support. Innocuous and logical behavior was given its worst possible connotations. In order to prove a fact by circumstances, there must be positive proof of some fact which does not itself directly establish the fact in dispute, but which affords a reasonable inference of its existence. The fact upon which it is sought to base an inference must be shown and not left to rest in conjecture. If and when the fact is shown, it must then appear that the inference drawn is the only one that is fair and reasonable (see *Markel v Spencer*, 5 AD2d 400, affd 5 NY2d 958). Here, the inference of complicity was drawn by respondent without any basis in established fact. Even if a reasonable factual basis had been established, the inference of complicity drawn by respondent was not the only possible inference; other innocuous inferences of normal behavior were more reasonably to be drawn. Hopkins, Acting P. J., Martuscello, Damiani and Suozzi, JJ., concur.