OPINION OF THE COURT
Dominic R. Massaro, J.
Pursuant to CPL 420.35, Annette Johnson moves for an order waiving the mandatory surcharge imposed upon her at *1016 the time of sentencing, nunc pro tunc. The People are in opposition.
The record discloses that under indictment No. 334/89, Ms. Johnson was convicted of a felony on November 20, 1989: criminal sale of a controlled substance in the fifth degree (Penal Law § 220.06). On January 11, 1990, she was sentenced to an indeterminate term of incarceration of from 2Vi to 5 years; the mandatory surcharge of $100 was likewise imposed as provided by law (see, Penal Law § 60.35).
Defendant is currently serving her term at the Albion Correctional Facility in Albion, New York. Her sole source of income is from prison earnings; it approximates $4.75 per week. Ms. Johnson states that the wage is being encumbered by order of this court to pay the surcharge.[1] Said deduction approximates $1.15 to 1.20 weekly. Her application raises a question as to whether the 25% encumbrance levied here presents an "unreasonable hardship” in that it does not enable her to meet "personal hygiene needs”, such as deodorant, which she claims is not furnished by the correctional facility.
PENALTY ASSESSMENT
The mandatory surcharge is provided for in section 60.35 of the Penal Law:
"1. * * * [W]henever proceedings in * * * a court of this state result in a conviction for a felony * * * there shall be levied at sentencing a mandatory surcharge * * * in addition to any sentence required or permitted by law * * *
"(a) a person convicted of a felony shall pay a mandatory surcharge of one hundred dollars ” (emphasis added).
The surcharge, part of a 1982 omnibus revenue measure, was designated by the Legislature as a revenue-producing device (see, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 60.35, at 200). It is waivable where "because of the indigency of the offender, the payment of said surcharge would work an unreasonable hardship on the person convicted or his or her immediate family” (CPL 420.35; see also, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 420.35, at 299).
*1017 Pursuant to section 60.35 (3) of the Penal Law, moneys collected because of court-imposed mandatory surcharges are to be paid to "the state comptroller who shall deposit such money in the state treasury * * * to the credit of the criminal justice improvement account”. This account was established by section 97-bb of the State Finance Law (L 1989, ch 62, §§ 83, 101).
Subdivision (3) of section 97-bb of the State Finance Law provides that moneys collected are to be used as follows:
"3. Monies of the criminal justice improvement account, following appropriation by the legislature and allocation by the director of the budget, shall be made available for the following purposes and in accordance with the following priorities:
"a. For services and expenses of programs to provide services to crime victims and witnesses and for payments to victims in accordance with the federal crime control act of 1984, as administered by the crime victims board;
"b. Missing children programs;
”c. Identification and criminal history services for criminal justice purposes and for employment and licensure purposes authorized by law;
"d. For services and expenses related to the traffic safety law enforcement and disposition program;
"e. Improvements in the accuracy and completeness of criminal justice records;
”f. For services and expenses related to the office of justice system analysis;
"g. Criminal justice information and telecommunication systems improvements and cooperative information exchange and research ventures.”
Thus, these surcharges fund a number of significant programs which, in turn, provide various forms of aid and assistance to the criminal justice system in its ongoing attempt to minimize the effects of crime upon our citizenry. The Legislature, in its wisdom, decided that at least part of the financial costs of these efforts should be borne by those who have actually committed crimes.[2]
*1018 DEFENDANT IS EMPLOYED
As to the instant matter, defendant’s motion to vacate her mandatory surcharge is premature. Ms. Johnson is not indigent. A request to vacate a mandatory surcharge due to indigency must await the termination of the period of incarceration (see, People v Conigliaro, 144 AD2d 685 [2d Dept 1988]; People v Peralta, 127 AD2d 803 [2d Dept 1987]; People v Perrine, 111 AD2d 193 [2d Dept 1985]).
While it is true that defendant has no previous record of income or employment whatsoever, she is now an employee of the State in the manufacture of goods. For purposes of the surcharge, the Warden or Superintendent has been directed to withhold 25% of her weekly earnings from such employment until full satisfaction of the $100 due (see, Penal Law § 60.35 [5]; see also, Correction Law §§ 187, 116). Ms. Johnson is provided with both room and board; soap and bathing facilities are daily available for purposes of personal cleanliness. She carries no indebtedness for past legal representation during trial, which was provided for her without cost. Medical care is likewise now provided, as is educational opportunity and occupational training. Neither is she burdened with the panoply of life’s everyday expenses, nor does her application set forth any "immediate family” need. In light of this analysis, the terms of payment herein cannot be categorized as either offensive or unduly harsh.
The imposition of the mandatory surcharge during incarceration is an important judicial alternative to directing its payment at some future date (see, People v Rivera, 93 AD2d 845 [2d Dept 1983]; People v West, 124 Misc 2d 622 [County Ct, Yates County 1984]) or to the more popular practice of its pro forma waiving on a showing of indigency at the instant of sentencing. In addition to the surcharge being fair and equitable here, said approach affords the public treasury an assurance that it will actually be paid, and that real revenue can be generated (cf., People v Fulton, 138 AD2d 514 [2d Dept 1988], lv denied 71 NY2d 1027 [1988]; People v Lewis, 134 AD2d 286 [1987]).[3] Clearly, given the minimal per capita *1019 amount(s) involved, the cost of otherwise attempting to implement this plain legislative intent at a time subsequent to an inmate’s release would diminish, if not totally eradicate, the financial benefits expected to be gained whenever an uncooperative, unwilling or unable defendant is involved.
TRIVIALIZATION NOT WARRANTED
Moreover, these minimal amounts must never equate with a trivialization of the seriousness with which society’s outrage at the commission of crime should be expressed (see, Bellacosa, op. cit.). The very application now before the court gives ample testimony to the fact that the surcharge is in fact a penalty assessment;* **[4] this in addition to any sentence of incarceration imposed for conviction. Its effect represents a further deprivation to this 32-year-old recidivist with a criminal career spanning 16 of those years, in this instance of the ability (at her option) to purchase simple luxuries such as deodorant in the prison commissary. Nor is the assessment without its rehabilitative aspects, albeit society punishes offenders at the very same time that it attempts to rehabilitate them. The assessment will hopefully have the salutary effect of causing this defendant to properly apportion or "budget” regular income. Should she choose to take advantage of available education/occupational opportunities with an eye toward future employment, such an ability can combine to prove useful upon her reentry into society.
Accordingly, the defendant’s motion is denied.

. By order of this court entered at the time of sentencing, 25% of defendant’s prison earnings are being assessed until payment in full of the referenced surcharge.

. To underscore its intent, CPL 420.35 authorizes commitment for failure to pay (see, CPL 430.20).

. For the year ending December 31, 1989, some 65,000 felony convictions were recorded throughout New York State. Given the $100 mandatory surcharge to be imposed, while the revenue-producing aspect of the statute should always be of secondary import to proper court adjudication, the financial benefits under a policy of uniform application are obvious. The statute provides for $60 misdemeanor and $25 violation mandatory surcharges as well.
*1019 Interestingly, even while the within decision is being penned, section 60.35 of the Penal Law has been amended, effective May 25, 1990, to increase the amount of the mandatory surcharge: for felonies, from $100 to $150, for misdemeanors, from $60 to $85, and for violations, from $25 to $40 (L 1990, ch 190, § 319).

. A 1983 amendment of section 60.35 of the Penal Law and CPL 420.35 substitutes the words "mandatory surcharge” for "penalty assessment” wherever appearing (L 1983, ch 15, §§ 2, 3, respectively.)