■ MICHAEL FORTUNE, Appellant, v SCOTT FORD, INC., Respondent.—Per Curiam. Appeal from a judgment of the Supreme Court (Duskas, J.), entered April 3, 1990 in St. Lawrence County, upon a decision of the court in favor of defendant.

Plaintiff commenced this action pursuant to General Business Law § 198-b, the used car "Lemon Law", seeking to compel defendant to refund the purchase price paid by plaintiff for a 1985 Oldsmobile and to accept the return of the vehicle. Following a nonjury trial, Supreme Court concluded that plaintiff was not entitled to the remedies provided by General Business Law § 198-b. Plaintiff appeals from the judgment in favor of defendant.

Based upon the evidence presented at trial, Supreme Court found that plaintiff took possession of the vehicle, which had 32,363 miles showing on the odometer, on February 27, 1988. The vehicle was subject to a warranty of 60 days or 3,000 miles, whichever occurred first, the minimum warranty then required by the statute (General Business Law § 198-b [b] [1] [former (a)]). Within the warranty period, plaintiff returned the vehicle to defendant to correct several problems, including the leakage of engine coolant, but the initial repair attempt did not correct the coolant leakage. Defendant then traced the leak to a crack in the engine block and undertook to repair the defect by grinding a groove into the crack, drilling and tapping four set screws to stabilize the crack, and then filling the area with a material that adheres to metal. The person who supervised the repair testified that the material was commonly used for this type of repair, and that the repair was done properly.

Plaintiff picked up the vehicle in June 1988 and drove the vehicle without any apparent problem until September 1988, when he again discovered a coolant leak. Plaintiff commenced this action in December 1988. At the time of the trial in February 1990, plaintiff's vehicle had been driven some 54,000 miles, although the coolant leak continued unabated, requiring plaintiff to add coolant on a regular basis. Supreme Court held that since plaintiff accepted the vehicle following the repair in June 1988 without invoking his rights under the Lemon Law, and since he thereafter used and operated the vehicle on a regular basis until after the expiration of the warranty period, plaintiff was not entitled to relief under General Business Law § 198-b.

We are of the view that neither plaintiff's acceptance and continued operation of the vehicle for a period of time after the repair nor his failure to invoke his Lemon Law rights during the warranty period precludes plaintiff from recovering under the statute. General Business Law § 198-b (c) (1) provides that "[i]f the dealer or his agent fails to correct a malfunction or defect as required by the warranty * * * which substantially impairs the value of the used motor vehicle * * * the dealer shall accept return of the used motor vehicle from the consumer and refund to the consumer the full purchase price". The statute provides for two affirmative defenses: (1) that the defect does not substantially impair the value of the vehicle, and (2) that the defect is the result of abuse, neglect or unreasonable modifications of the vehicle

(General Business Law § 198-b [c] [1] [a], [b]). Neither affirmative defense was raised by defendant.

The statute also creates a presumption that the dealer has had a reasonable opportunity to correct the defect if the same defect has been subject to repair three or more times by the dealer during the warranty period, but the defect continues to exist, or if the vehicle has been out of service due to the defect or its repairs for a cumulative total of 15 or more days during the warranty period (General Business Law § 198-b [c] [2]). Once the vehicle is out of service for more than 45 days during the warranty period due to the defect or repair, the consumer is automatically entitled to the statutory replacement or refund remedies *(ibid.)*. Plaintiff's vehicle was in defendant's possession for some 60 days prior to its return in June 1988, but Supreme Court found that a substantial portion of this period was due to plaintiff's personal convenience or for reasons unrelated to the coolant leak. Although plaintiff did not establish that the 45-day period had been met, it is clear that the car was out of service due to the repair of the coolant leak for more than 15 days. It is, therefore, presumed that defendant had a reasonable opportunity to make the repair (General Business Law § 198-b [c] [2] [b]).

The statutory repair or reimbursement requirement is applicable "notwithstanding the fact that the warranty period has expired, provided the consumer notifies the dealer of the failure of a covered part within the specified warranty period" (General Business Law § 198-b [b] [3]). It is undisputed that plaintiff notified the dealer of a coolant leak within the warranty period and, therefore, plaintiff's Lemon Law rights as to that defect did not expire at the end of the warranty period *(ibid.)*. Having established that defendant was notified of a defect within the warranty period and that defendant had a reasonable opportunity to repair the defect, plaintiff is entitled to return the vehicle and obtain a refund if defendant failed to correct the defect (General Business Law § 198-b [c] [1]).

Plaintiff bore the burden of proving that the defect reoccurred with the failure of the repair *(see, Jandreau v La Vigne,* 170 AD2d 861). Such proof need not be by expert testimony *(supra)*. Here, while plaintiff's proof was perhaps not presented as well as it might have been, on cross-examination plaintiff testified that the leak reoccurred at the spot where the original repair had been made. On both direct and cross-examination, plaintiff testified that the leaking fluid was antifreeze and that he was familiar with antifreeze. Within

the broad authority this court has in reviewing a verdict rendered after a nonjury trial *(see, Loomis v Maguire's Equip. Sales,* 124 AD2d 82, 85, *lv denied* 70 NY2d 606), we find that plaintiff satisfactorily established that the repair failed causing coolant to leak as a result of the same warranted defect. Accordingly, the judgment must be reversed, judgment awarded in favor of plaintiff and the matter remitted to Supreme Court for a determination of damages. Weiss, Mikoll, Levine and Crew III, JJ., concur.

Casey, J. P. (dissenting). The majority holds that a used car dealer who employs an accepted method of repair to correct a coolant leak detected during the warranty period is liable under the used car "Lemon Law" (General Business Law § 198-b) when a coolant leak appears some three months later, after expiration of the warranty period and after the vehicle had been driven on a regular basis without any problem, despite the absence of any evidence that the repair was not properly done or that the repair failed. Since the effect of this holding is to relieve plaintiff of the burden of proving that defendant failed to correct the defect, thereby extending the coverage of the Lemon Law far beyond its intended scope, I dissent.

The critical issue in this case is whether defendant failed to correct the defect that caused the original coolant leak *(see,* General Business Law § 198-b [c] [1]). Plaintiff presented no direct evidence on this issue. In contrast, defendant presented the expert who supervised the repair of plaintiff's vehicle. He testified that the repair method used on plaintiff's vehicle was an accepted technique to repair a crack in an engine block and that the repair was properly done. After the repair was performed, the original coolant leak stopped and the vehicle was operated on a regular basis. To carry his burden of proof on the issue, plaintiff relied exclusively on the appearance of a coolant leak some three months after the repair was done as circumstantial evidence that defendant's repair failed to correct the defect. "In order to prove a fact by circumstances, there must be positive proof of some fact which does not itself directly establish the fact in dispute, but which affords a reasonable inference of its existence. The fact upon which it is sought to base an inference must be shown and not left to rest in conjecture. If and when the fact is shown, it must then appear that the inference drawn is the only one that is fair and reasonable (see *Markel v Spencer,* 5 AD2d 400, affd 5 NY2d 958)." *(Matter of Ridings v Vaccarello,* 55 AD2d 650, 651.)

There is positive proof that the engine in defendant's vehicle began to leak coolant three months after defendant repaired the defect that was the cause of the original coolant leak. There is, however, no evidence that the cause of the subsequent leak was related in any way to the cause of the original leak, which was corrected by defendant's repair. In fact, plaintiff made no effort to prove the cause of the subsequent leak, and the majority holds that plaintiff had no obligation to do so, despite the undisputed expert evidence submitted by defendant that the cause of the original leak was properly repaired using an accepted technique. Nor did plaintiff make any effort to prove that the subsequent leak was in the same location as the original leak. A review of the record reveals that the location of neither leak can be determined with any degree of accuracy or certainty. Nor did plaintiff make any effort to establish that the subsequent coolant leak could have no cause other than the defect that caused the original leak. On the contrary, plaintiff's evidence reveals that coolant leaks can be difficult to diagnose and can have causes other than a crack in the engine block. For example, when plaintiff first discovered the original coolant leak within the warranty period he apparently took the vehicle to another mechanic before returning it to defendant. This mechanic diagnosed the problem as "[r]ight head gasket leaking [and] intake manifold leaking", a diagnosis that defendant discovered was incorrect when it unsuccessfully sought to correct the original leak by installing an intake manifold gasket.

The only remotely relevant evidence was elicited by defendant when, on cross-examination, plaintiff was asked whether the subsequent leak was where the repair was made and he responded, "To the best of my knowledge, yes." To infer that defendant's effort to correct the defect failed based upon this equivocal response, as the majority does, requires a quantum leap of deduction that effectively relieves plaintiff of his burden of proof on the issue, particularly in the absence of any evidence that plaintiff knew or could have known exactly where the repair was made. It is noteworthy that defendant had to remove the engine from plaintiff's vehicle in order to do the repair and, as part of the repair process, the surface of the repaired area was ground smooth to match the original surface.

Given the undisputed expert testimony that defendant properly performed an accepted repair technique which stopped the original coolant leak, and in the absence of any evidence as to the cause of the subsequent coolant leak, and in view of

the evidence that coolant leaks can be attributed to causes other than a cracked engine block, it is clear that the majority has engaged in pure conjecture to hypothesize that the appearance of a coolant leak some three months after the repair was made establishes that defendant failed to repair the crack in the engine block which caused the original coolant leak. Even assuming that the inference drawn by the majority could be characterized as fair and reasonable, it is not the only fair and reasonable inference. It is at least equally as likely, based upon the evidence in this record, that the subsequent coolant leak was totally unrelated to the original leak, and was caused by some other defect that manifested itself during plaintiff's regular use of the vehicle for three months after the defect that caused the original leak was corrected. The circumstantial evidence is inadequate, as a matter of law, to prove that defendant failed to correct the defect which caused the original coolant leak, but even if the evidence could be considered sufficient to raise a question of fact on the issue, the majority's resolution of that issue is contrary to the weight of the evidence. Accordingly, Supreme Court's judgment in favor of defendant should be affirmed.

Ordered that the judgment is reversed, on the law, with costs, judgment awarded in favor of plaintiff and matter remitted to the Supreme Court for further proceedings not inconsistent with this court's decision.