*788 OPINION OF THE COURT
Peter M. Leavitt, J.
This petition is disposed of as follows: The following facts are either undisputed or apparent from the record. Petitioner has owned and operated a solid waste disposal facility (i.e., a landfill) in the County of Orange for approximately 25 years. In March 1996, petitioner submitted an application for a permit to expand its facility. Between February 1998 and November 1998, a legislative hearing, an issues conference and an adjudicatory hearing were held. In February 1999, following the consideration of, inter alia, briefs submitted by the applicant and the New York State Department of Environmental Conservation (hereafter, DEC) — both now parties hereto — the Administrative Law Judge (hereafter, ALJ) issued a decision recommending that petitioner’s application for an expansion permit be denied. In April 1999, respondent Commissioner of the New York State Department of Environmental Conservation (hereafter, the Commissioner) adopted the ALJ’s recommendation and denied petitioner’s application. Petitioner now seeks from this court orders annulling said determinations or, alternatively, remitting the matter with certain directions for respondents’ further consideration in compliance therewith. In support of its eight claims for relief, petitioner alleges, inter alia, that respondents’ determinations were arbitrary and capricious, unsupported by substantial evidence, rendered in violation of the provisions of article 23-A of the Correction Law, and rendered in violation of its constitutional rights to equal protection of the law.
Upon review of the record the court finds that neither of the determinations at issue herein was arbitrary or capricious. Indeed, the ALJ’s decision was solidly founded upon information and argument which he considered during the extensive proceedings which were conducted concerning the application. This included comment — both oral and written — which was solicited and received from the general public during the legislative hearing, as well as testimony — both anecdotal and expert— which was received during the adjudicatory hearing. The ALJ’s decision itself is sound and well reasoned, as is the Commissioner’s decision adopting it. In each, the bases for the determination are clearly identified and the process, from inception to conclusion, is carefully enunciated and explained. Whether or not petitioner or this court would have reached the same conclusions the determinations are, indisputably, reasonable, rational and thoughtful.
*789 Petitioner is a corporation wholly owned by three principals who each hold one third of it. In 1997 petitioner was convicted, by plea of guilty before the United States District Court for the Southern District of New York, of a criminal charge related to the filing of false tax returns between 1983 and 1988. Petitioner was placed on probation — which is scheduled to terminate in July 2000 — and fined $910,000. Additionally, the District Court appointed a monitor to oversee its operations for five years. Each of the three principals also entered pleas of guilty to various charges — some related, some not — and received sentences ranging from 7 to 41 months’ incarceration, and fines and restitution of from $30,000 to $3,200,000.
One of the pivotal issues to arise during the application process was respondents’ concerns over petitioner’s fitness in light of these criminal convictions. In an attempt to assuage these concerns petitioner proposed that its management and operations could be controlled by a trust which would, thereby, ensure that none of the principals would be involved. Petitioner submitted a trust agreement and consent order setting out the details of its proposal and inviting comment thereon. Both the acceptability of the trust concept in general, and of petitioner’s proposal in particular, were explored in exhaustive detail.
Petitioner argues that respondents’ determinations, finding petitioner unfit and denying its application, were unlawful since they were based upon the fact that petitioner and its principals had been convicted of criminal offenses, in violation of section 752 of the Correction Law. The fact of the criminal convictions was not the sole basis for denial. However, even assuming arguendo that it had been, the determinations were not unlawful if:
“(1) there [was] a direct relationship between * * * the * * * criminal offenses and the specific license * * * sought; or
“(2) the issuance of the license * * * would involve an unreasonable risk to * * * the safety or welfare of* * * the general public” (Correction Law § 752).
In each of their decisions both the ALJ and the Commissioner demonstrated that upon careful consideration of the factors enumerated in section 753 (1) of the Correction Law, there was a direct relationship between the offense and the permit sought and that issuance of the permit to petitioner would pose an unreasonable risk to the general public. Since these determinations were neither arbitrary nor capricious, and as they do not constitute an abuse of discretion, petitioner’s claim must fail. (See, Matter of Arrocha v Board of Educ., 93 NY2d 361 [1999].)
*790 Petitioner has argued, during the proceedings below and before this court, that there was no direct relationship between the permit which it sought and any of the criminal offenses of which it, or any of its principals, were convicted. The merit of this argument, however, is dependent upon a definition of the term “direct relationship” which is far narrower than the one which the statute provides. (See, Correction Law § 750 [3].) None of the convictions was for an offense committed in furtherance of, by one engaged in, or through the instrumentality of, petitioner’s business operation. But each of the convictions was for an offense involving a long-standing conspiracy to commit extortion or to defraud the United States Government by one means or another. As both the ALJ and the Commissioner noted, the nature of such criminal conduct certainly has a direct bearing on the perpetrator’s fitness to manage and operate a waste disposal facility, which — by its nature— requires the DEC to rely upon a permittee to fulfill extensive self-policing, self-recording and self-reporting responsibilities.
Moreover, the very raison d’etre for a waste disposal facility is to preserve and protect the environment and, thereby, the public health and welfare. Whether it be the product of ineptitude or dishonesty, therefore, the spectre of mismanagement involves an unreasonable risk to the safety and welfare of the general public.
Petitioner also argues that respondents’ determinations were unlawful because permits had been granted to applicants with like records and because a trust agreement like the one which petitioner proposed had been accepted when proposed by a prior, successful, applicant for a like permit. This disparity, petitioner claims, violated its constitutional rights to equal protection of the law.
However, petitioner has failed to satisfy its burden of proving the unconstitutionality of respondents’ actions beyond a reasonable doubt. Both the ALJ and the Commissioner articulated factual distinctions between petitioner’s application and those of the permittees to which petitioner refers, and their findings are amply supported by the record. In any event, there is absolutely no indication that the disparate determinations were the consequence of respondents’ employment of an inherently suspect classification.
Nor are the determinations unlawful, as petitioner also claims, for respondents’ failure to follow binding precedent in the form of the aforementioned prior applications. As noted above, said applications were factually distinguishable from *791 and, therefore, did not present “essentially the same facts” as petitioner’s. (Compare, Matter of Field Delivery Serv. [Roberts], 66 NY2d 516, 518 [1985].) Since these distinctions were supported by the record and articulated in the determinations, this claim as well must fail. (See, Matter of County of Westchester v Williams, 125 AD2d 396, 397-398 [2d Dept 1986].)
Furthermore, the mere fact that the DEC had accepted a trust agreement in granting one application did not establish a binding precedent compelling it to accept trust agreements for any subsequent applicants. A trust agreement is, of course, intended to assure the DEC that the operation and management of the permitted facility will be insulated from the influence of one or more entities or individuals. To a certain degree such an arrangement serves the public interest by allowing the operation, or continued operation, of a necessary facility. For the most part, however, a trust agreement benefits the permit-tee, whose application would otherwise be denied.
In the instant situation respondents have determined that neither petitioner, nor any of the individuals who own it, are fit to operate the facility with an expansion permit. Respondents have also determined that the expansion which petitioner seeks is not necessary to serve the public interest, since the requisite increase in landfill capacity which petitioner forecasts can be satisfied through alternative means. Each of these determinations is fully supported in the record and fully articulated in respondents’ decisions. Said determinations are neither arbitrary or capricious nor otherwise unlawful. Thus, granting the application would produce no countervailing benefit to the public interest sufficient to outweigh petitioner’s lack of fitness. The DEC should not, therefore, be compelled to accept petitioner’s proposed trust arrangement and its attendant burdens.
The remaining issues raised by petitioner concern whether respondents’ determinations were supported by substantial evidence. (See, CPLR 7803 [4]; Matter of Torres v County of Westchester, 182 AD2d 689 [2d Dept 1992]; Matter of Ridings v Vaccarello, 55 AD2d 650 [2d Dept 1976].) There being no other objections raised which would terminate this proceeding, it is respectfully transferred to the Appellate Division, Second Department, for its determination of all issues or, if deemed appropriate, remittal. (CPLR 7804 [g].) Counsel are referred to *792 Rules of the Appellate Division, Second Department (22 NYCRR) § 670.16 for guidance as to how to properly prosecute said transfer.