OPINION OF THE COURT
Carolyn E. Demarest, J.
Petitioner moved pro se pursuant to CPL 420.40 for deferral of the mandatory surcharge imposed at the time of his sentence. Petitioner was sentenced on April 22, 1999, to a term of incarceration of 10 years, following a conviction by plea of guilty to rape in the first degree on April 12, 1999. At that time *313 a mandatory surcharge of $150 and a crime victim assistance fee of $5 were levied as required by Penal Law § 60.35 (1) (a) and such fees were directed to be collected from the petitioner during his term of imprisonment from moneys to the credit of an inmates’ fund by the warden of the facility where he is confined. Petitioner claims as the basis for his application extreme financial hardship. He asserts that he is trying to support his family, four children and his wife, with the little bit of money that he gets from programming. In addition, petitioner states he is facing a child support matter in the County of Schenectady, New York.
The People submitted a four-sentence paragraph in opposition to petitioner’s motion, contending that he fails to provide any compelling evidence of unreasonable hardship, and adding that he is regularly supplied with items deemed necessary to maintain proper standards of hygiene, and that nonessentials are available at reasonable prices at the prison commissary. The People did not address the petitioner’s argument that he needs to provide financial Support to his family.
Every inmate may receive compensation for work performed during his or her imprisonment (Correction Law § 187 [1]). Inmates may also earn an “incentive allowance” for the efficient and willing performance of duties assigned or for progress and achievement in educational, career and industrial training programs (Correction Law § 200). Funds earned by inmates are required to be deposited by the warden or superintendent of the institution at least once in each week to the inmate’s credit in banks designated by the comptroller (Correction Law § 116). The Department of Correctional Services is required to provide for the establishment of a credit system for each inmate and the manner in which such earnings shall be paid to the inmate or his dependents or held in trust for him until his release (Correction Law § 187 [3]).
The Commissioner of Correctional Services has broad administrative and discretionary authority over inmates’ access to wages during imprisonment (Matter of Cowart v Coombe, 247 AD2d 729 [3d Dept 1998]). “The amount of such compensation to the credit of any prisoner may be drawn by the prisoner during his imprisonment, only upon approval of the commissioner to aid dependent relatives of such prisoner, or for such other purposes as the commissioner may approve” (Correction Law § 189 [1]). The Department of Correctional Services may retain 20% of an inmate’s weekly earnings and 50% of any earnings received from any outside source to cover *314 the cost of the mandatory surcharge (see, People v Olivo, 156 Misc 2d 149 [Sup Ct, Kings County 1992]). The statute specifies: “For the purposes of collecting such mandatory surcharge and crime victim assistance fee, the state shall be legally entitled to the money to the credit of an inmates’ fund or money which is earned by an inmate in a work release program” (Penal Law § 60.35 [5] [a]).
Penal Law § 60.35 provides for imposition of the mandatory surcharge and crime victim assistance fee. Provisions concerning the collection, remission, and consequence of the failure to pay the surcharge are set forth in CPL 420.35. In 1995, the Criminal Procedure Law was amended to provide that under no circumstances shall the mandatory surcharge be waived (CPL 420.35 [2], as amended by L 1995, ch 3, eff July 1, 1995). The 1995 legislation also provided for deferral of the mandatory surcharge upon a finding that it will work an unreasonable hardship (see, CPL 420.40). The statute provides for a hearing to determine hardship for persons whose sentences do not exceed 60 days’ imprisonment. The procedure for the hearing is set forth in CPL 420.40 (2) and Penal Law § 60.35 (8).[1] If a finding of unreasonable hardship is made at that proceeding, the court will defer payment and a civil judgment will be entered (see, CPL 420.40 [5]). The hearing procedure does not apply in cases where the sentence exceeds 60 days (Penal Law § 60.35 [8]). In such cases, the statute provides that the mandatory surcharge “shall be governed by the provisions of section 60.30 of the penal law” (see, Penal Law § 60.35 [8]). Penal Law § 60.30 states that article 60 does not deprive the court of any authority conferred by law to impose civil penalties and include an order exercising such authority as part of the judgment of conviction. It is not clear, however, what aspects of the mandatory surcharge Penal Law § 60.30 is intended to govern. The statutory provisions governing the surcharge contain procedures for collection of unpaid mandatory surcharges (see, CPL 420.35 [1]; 420.10, 420.40 [5]). In addition, CPL 420.10, which governs payment and collection of fines and restitution and is made applicable to mandatory surcharges by CPL 420.35 (1), sets forth collection procedures in great detail. The law also provides a mechanism for collection of the mandatory surcharge from the earnings of incarcerated persons.
The procedure for collecting the mandatory surcharge from incarcerated persons is found in Penal Law § 60.35 (5). In the *315 event of failure to pay the mandatory surcharge,[2] the clerk of the court in which the conviction was obtained is required to notify the superintendent of the facility where the person is confined, who is then required to collect any amount owing “from moneys to the credit of an inmates’ fund” (Penal Law § 60.35 [5]).
Scrutiny of the statutory scheme relating to collection of the mandatory surcharge reveals that the law does not provide a mechanism for deferral for incarcerated persons. Whether or not it was the intent of the Legislature to preclude deferral for such persons is difficult to determine. The legislation is “poorly drafted and difficult to follow” (see, Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 420.40, 2000 Cumulative Pocket Part, at 111). Clearly, the statute specifically limits the availability of a hearing regarding deferral to persons who were not sentenced to imprisonment or who were sentenced to less than 60 days, suggesting that deferral for hardship is available only for those who would be self-supporting residents in the community. Moreover, the statute fails to specify what information or documentation an inmate would have to supply to the court in order to demonstrate entitlement to a deferral, or what procedure would have to be followed by incarcerated persons seeking to obtain a deferral. Significantly, as pointed out heretofore, the law does provide a mechanism to collect the surcharge from incarcerated individuals, as well as for collection of the surcharge in the event of nonpayment by nonincarcerated individuals in the same manner as a civil judgment (see, CPL 420.35 [1]; 420.10, 420.40 [5]). In view of all the foregoing, it would appear that the statutory scheme did not contemplate deferral as an option for incarcerated individuals.
The policy considerations underlying such a conclusion are supported to some extent by case law. Prior to the 1995 amendments prohibiting waiver of the surcharge, prevailing authority consistently held that prisoners could not obtain waivers until the expiration of their term of incarceration “since the de *316 fendant may earn funds while incarcerated from which to pay the surcharge” (People v Benson, 232 AD2d 497, 498 [2d Dept 1996]). It was well settled that applications for vacatur of the mandatory surcharge were properly made only at the expiration of incarceration and prisoners’ motions seeking waiver of the mandatory surcharge prior to 1995 were dismissed as premature. (See, People v Mack, 237 AD2d 535 [2d Dept 1997]; People v Velez, 216 AD2d 339 [2d Dept 1995]; People v Snell, 161 AD2d 1125 [4th Dept 1990]; People v Santiago, 160 Misc 2d 349 [Sup Ct, Kings County 1994]; People v Olivo, 156 Misc 2d 149, supra; People v West, 124 Misc 2d 622 [Yates County Ct 1984].) Indigence was clearly a condition precedent for obtaining a waiver of all or any part of the mandatory surcharge. However, “[incarceration, standing alone, cannot support a prima facie case of indigency” (People v Olivo, supra, 156 Misc 2d, at 153). Courts have actually concluded that incarceration precluded a finding of indigence and that an incarcerated person could not suffer unreasonable hardship (People v Santiago, supra; People v Holmes, NYLJ, Oct. 1, 1993, at 26, col 2 [Sup Ct, Kings County]; People v Scantlebury, NYLJ, Apr. 26,1991, at 26, col 1 [Sup Ct, Kings County]; People v Johnson, 147 Misc 2d 1015 [Sup Ct, Bronx County]). It is reasonable to conclude that just as indigence was a condition precedent for a finding that waiver was warranted, similarly, indigence would be required in order to grant a deferral.
The statutory language providing for waiver, before it was repealed in 1995, was nearly identical to the current statutory language providing for deferral. The waiver provision in CPL 420.35 (2) provided that the court may waive all or part of the mandatory surcharge “where, because of the indigence of the offender, the payment of said surcharge would work an unreasonable hardship on the person convicted or his or her immediate family” (language added by L 1983, ch 15, § 3; amended and designated as subd [2] by L 1990, ch 190, § 320; subd [2] repealed by L 1995, ch 3, § 67 and subd [4] redesignated [2] by L 1995, ch 3, § 68, and as so redesignated, prohibits the waiver of the mandatory surcharge). CPL 420.40 (2) provides that persons upon whom a mandatory surcharge was levied shall have an opportunity to establish that it should be deferred “because, due to the indigence of such person the payment of said surcharge would work an unreasonable hardship on the person or his or her immediate family.” In light of the authority holding that prisoners are not indigent, the absence of a mechanism in the law for incarcerated persons to obtain deferrals of the mandatory surcharge is logical.
*317 Moreover, the Third Department has ruled without merit a defendant’s claim that statutes relating to the collection of the mandatory surcharge discriminate against indigent inmates whose sentences of incarceration exceed 60 days in that their inmate funds may be garnished to satisfy the surcharge, while various other methods of collection are authorized with respect to others required to pay a mandatory surcharge. The “various other methods” would presumably encompass deferrals. “It has been repeatedly held that Penal Law § 60.35 and CPL 420.35 treat all persons convicted of Penal Law offenses similarly, and that the penalties imposed pursuant thereto bear a reasonable relationship to the State’s legitimate interest in raising revenues (see, People v Barnes, 62 NY2d 702; People v Arthur, 234 AD2d 792 * * *).” (People v Dunn, 254 AD2d 511, 512 [3d Dept], lv denied 92 NY2d 1031 [1998], cert denied 527 US 1024 [1999].)
Two nisi prius courts presented with applications for deferral by incarcerated individuals since the 1995 enactments have reached contrary results, although neither court questioned the availability of deferral. In People v Parker (183 Misc 2d 787 [Sup Ct, Kings County 2000]), the court denied the inmate’s application for deferral, holding that he had not demonstrated unreasonable hardship to himself or established that he was in any way responsible for the support of any immediate family member who has been adversely affected by the deductions from his jail earnings. The court did not address the failure of the statute to specify a procedure for seeking deferral by incarcerated individuals.
In People v Huggins (179 Misc 2d 636 [Greene County Ct 1999]), the court concluded that the mechanism for deferral set forth in Penal Law § 60.35 (8) and CPL 420.40 (2) is not available for persons sentenced to a term of confinement. The Huggins court nevertheless granted the deferral, interpreting Penal Law § 60.30, applicable to those incarcerated, as providing discretionary authority for the court to defer the mandatory surcharge to a definite future date in the case of incarcerated individuals. The court in Huggins did not address the extent to which an inmate is required to establish unreasonable hardship or indigence.
It is this court’s opinion that neither appellate authority, nor the provisions of the statute, authorize the granting of an application for deferral of the mandatory surcharge in the case of a person incarcerated in excess of 60 days. Moreover, the petitioner herein has not demonstrated that withholding a per *318 centage of his earnings to satisfy payment of the mandatory surcharge will work an unreasonable hardship on himself or his immediate family, or that his circumstances are markedly different from any other similarly situated inmate. Accordingly, his motion to defer the mandatory surcharge and crime victim assistance fee is hereby denied.

. CPL 420.40 (2) references subdivision (3) of Penal Law § 60.35. It is clear from the context that this is a misprint.

. While Penal Law § 60.35 (5) (a) provides that upon failure to pay, the clerk of the court is required to notify the superintendent of the facility to collect the surcharge from inmates’ funds, the statute does not specify a time within which the incarcerated individual is required to pay the surcharge, upon the expiration of which the warden may commence collection of the surcharge and fee. As a result, a direction by the court to the warden of the prison facility to collect the mandatory surcharge and crime victim assistance fee from inmates’ funds is commonly issued at the time of sentence, and such collection begins at the commencement of the confinement.